33 F.3d 955
 Jeffrey HERSHBERGER, Appellee/Cross Appellant,
Kenneth Wheeler; Thomas Sherwood; Steven Schakel, Scott
Olmstead, Appellee/Cross Appellant,
Thomas Rayer, Ernest Alan Douglas, Appellee/Cross Appellant,
v.
Fred SCALETTA, John A. Thalacker, Appellant/Cross Appellee,
Larry Brimeyer; Stephen Salviati, Captain, Sued as Captain
Saviati; Kenneth R. Lewis, Lt.
 Nos. 93-3783, 93-3785.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 12, 1994.
Decided Aug. 26, 1994.
Rehearing and Suggestion for Rehearing
En Banc Denied Oct. 20, 1994.
 
 William A. Hill, Asst. Atty. Gen., Des Moines, IA, argued (Kristin W. Ensign, Asst. Atty. Gen., on the brief), for appellant.
 Philip B. Mears, Iowa City, IA, argued (Angela S. Baker, Iowa City, IA, on the brief), for appellee.
 Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.
 BEAM, Circuit Judge.
 
 
 1
 Jeffrey Hershberger and several other indigent inmates brought this 42 U.S.C. Sec. 1983 action against the named officials, seeking injunctive relief from the Iowa Men's Reformatory (the reformatory) policy of denying indigent inmates in administrative segregation any free legal or personal postage. The case was tried to a magistrate judge[1] with the parties' consent. The magistrate judge enjoined the reformatory's practices as to legal mail, but found its policy as to personal mail to be permissible. Parties on both sides appeal. We affirm the magistrate judge's orders.
 
 I. BACKGROUND
 
 2
 Reformatory inmates in administrative segregation are not allowed to earn money from prison jobs, nor are they provided with any allowance for stamps or other incidentals. Thus administratively segregated indigent inmates have no source of funds from which to buy postage. These inmates are allowed to go into debt for stamps for legal mail, but once their balance is in the red, however minimally, the reformatory imposes a 50 cent per month service charge. Further, once an inmate's negative balance reaches $7.50, the inmate must show "exceptional need" to reformatory officials before any further funds will be advanced for legal mail. The determination of "exceptional need" is left to reformatory officials' unfettered discretion. Finally, the reformatory does not provide indigent inmates with any free postage for personal mail.
 
 
 3
 After trial, the magistrate judge enjoined the practice of imposing a 50 cent per month service charge on negative balances resulting from purchases of legal postage; enjoined the practice, as currently implemented, of requiring inmates with negative balances over $7.50 to show "exceptional need;" and ordered the reformatory to provide indigent inmates with at least one free stamp and envelope per week for purposes of legal mail. The magistrate judge also found that the reformatory need not provide administratively segregated inmates with free postage for personal mail.
 
 II. DISCUSSION
 A. Legal Mail
 
 4
 We find the magistrate judge's decision to be without error,[2] and see no reason to repeat his well-reasoned analysis. We note, however, that the reformatory's contention that our recent case, Hamm v. Groose, 15 F.3d 110 (8th Cir.1994), somehow renders the magistrate judge's actions erroneous is without merit. Hamm holds that prison law clerks have no standing to bring an action on behalf of the inmates whom they are allegedly prevented from adequately aiding. While Hamm notes that an inmate alleging denial of access to the courts must show actual injury or prejudice, see McMaster v. Pung, 984 F.2d 948, 953 (8th Cir.1993), a systemic denial of inmates' constitutional right of access to the courts is such a fundamental deprivation that it is an injury in itself.[3] See Alston v. DeBruyn, 13 F.3d 1036, 1041 (7th Cir.1994); Sowell v. Vose, 941 F.2d 32, 34 (1st Cir.1991); Foster v. Basham, 932 F.2d 732, 734 (8th Cir.1991); Chandler v. Baird, 926 F.2d 1057, 1063 (11th Cir.1991); Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir.1989); see also Smith v. Erickson, 961 F.2d 1387, 1388 (8th Cir.1992) (Smith II ); Smith v. Erickson, 884 F.2d 1108, 1111 (8th Cir.1989) (Smith I ). Because the magistrate judge's analysis and actions fall well within the dictates of Bounds v. Smith, 430 U.S. 817, 824-25, 97 S.Ct. 1491, 1496-97, 52 L.Ed.2d 72 (1977), we affirm his orders relating to legal mail. See 8th Cir.R. 47B.
 
 B. Personal Mail
 
 5
 We sympathize with the inmates' contention that it makes little or no penological sense for an institution to impede inmates' maintenance of familial contact. We also agree that such policies seem especially infirm when applied to inmates who are troubled and having problems adjusting to the prison environment. However, regardless of our sympathies, indigent inmates have no constitutional right to free postage for nonlegal mail. Kaestel v. Lockhart, 746 F.2d 1323, 1325 (8th Cir.1984).[4] Therefore, the magistrate judge correctly ruled in favor of the reformatory on this point.
 
 III. CONCLUSION
 
 6
 For the reasons stated above, we affirm the magistrate judge's orders in all respects.
 
 
 7
 HEANEY, Senior Circuit Judge, concurring.
 
 
 8
 I concur in the majority's opinion. While I agree with its holding that the denial of any free postage for indigent inmates' legal mail is systemic and therefore "is such a fundamental deprivation that it is an injury in itself," see supra, I question the court's reasoning with respect to inmates' personal mail.
 
 
 9
 Prisoners, it is true, do not have an established right to unlimited free access to the mails. Jensen v. Klecker, 648 F.2d 1179, 1183 (8th Cir.1981). They do, however, have a constitutionally protected right to reasonable correspondence with persons in the outside world, Watts v. Brewer, 588 F.2d 646, 649 (8th Cir.1978) (citing Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974)), "subject to reasonable and necessary restrictions properly geared to legitimate institutional interests." Id. at 650.
 
 
 10
 The grievances addressed in Procunier, the Supreme Court's seminal case on prisoners' right to be free from undue mail censorship, involved First Amendment rights, and, as such, are distinguishable from those in the present case. The core, underlying principles, however, are the same. We relied on Procunier's standard in Kaestel v. Lockhart, 746 F.2d 1323, 1325 (8th Cir.1984), and Watts, 588 F.2d at 649-50, both non-First Amendment cases, in which we held that the rights of prisoners to communicate with inmates in other institutions and receive loose postal stamps are subject to reasonable and necessary restrictions related to legitimate institutional interests.
 
 
 11
 I can think of no legitimate governmental interests that are reasonably related to IMR's policy of denying indigent inmates some minimal amount of free postage for personal mail.[1] Denial of any such postage, it seems to me, is likely to do more harm than it can possibly do good.
 
 
 12
 Iowa is the exception and not the rule among states in not providing indigent inmates with a minimal amount of postage that may be used for personal mail.[2] Although I am constrained to go along with the majority because of our holding in Kaestel, I believe that the better route to go would be to reverse Kaestel 's rule and recognize the right of indigent prisoners to maintain minimum contacts with family members and friends.
 
 
 
 [1]
 The Honorable John A. Jarvey, Chief United States Magistrate Judge for the Northern District of Iowa
 
 
 [2]
 We do not interpret the magistrate judge's decision to say that the reformatory must make interest-free loans to inmates, nor do we interpret the decision to say that no limits may be imposed on inmates desiring to make more than one legal mailing a week
 
 
 [3]
 Further, the magistrate judge determined that the inmates had suffered various actual injuries from the reformatory's policies; he was simply unable to put a dollar value on the harm. Hershberger v. Scaletta, 861 F.Supp. 1470, 1472-73 (N.D.Iowa 1993)
 
 
 [4]
 Like the inmates in Kaestel, the inmates in the reformatory may receive free postage for personal mail through their prison counselor. Trial Transcript at 29-30
 
 
 [1]
 The appellants argue unconvincingly that
 [i]f IMR were required to provide unlimited free postage for indigents' personal mail, the financial result could be staggering. Additionally, inmates might have less incentive to work if postage were simply handed out with no restrictions.
 Appellant's Reply Br. at 5. The inmates here are not asking for "unlimited" free postage. They are asking for a minimal amount of free postage--an amount I highly doubt would result in "staggering" financial costs. The argument that inmates might have less incentive to work if postage were handed out is nonsensical in the present case because the plaintiff-inmates are (or were) in long-term lockup status and are (or were) prohibited from earning prison pay. Appellee's Br. at 42.
 
 
 [2]
 According to a comprehensive survey done by appellees, of forty-one states that responded, only ten states appeared not to expressly provide some amount of free postage to indigent inmates for personal mail. Appellee's Br. at 41. It is possible that inmates in those states have access to postage for personal mail through other legitimate means, e.g., monthly allowances, deadtime pay