Paul Michael BLAISE, Appellant,

v.

George FENN; C. Heald; Donald Dressler; Mary Piper; Crispus C. Nix; Paul Hedgepeth; James Helling, Appellees.

No. 94–1769.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 17, 1994.

Decided Feb. 23, 1995.

338

Patrick E. Ingram, Iowa City, IA, argued for appellant.

Robin Andrew Humphrey, Asst. Atty. Gen., Des Moines, IA, argued for appellees.

Before MAGILL, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and LOKEN, Circuit Judge.

MAGILL, Circuit Judge.

Paul Michael Blaise, an inmate at Iowa State Penitentiary (ISP), appeals the district court's[1] grant of summary judgment to defendants in this 42 U.S.C. § 1983 right of access to the courts action. Because we find that the ISP's inmate mail regulation is facially valid and that Blaise suffered no actual injury as a result of the regulation, we affirm.

## I. BACKGROUND

From October 16 to December 9, 1992, the mailroom at ISP seven times returned outgoing legal mail to Blaise, stating that he could not send mail at that time because his inmate account was approximately fifty dollars in arrears.[2] During this period, Blaise was represented by counsel, and his telephone calls and visits with counsel were not restricted.

ISP provides a monthly allowance of $7.70 to all inmates regardless of their disciplinary status. Inmates may use this income in any way they wish, including to pay postage for legal mail. Under ISP regulations, if an inmate has no funds, he may charge up to $3.50 in legal expenses to his account as an "advance" on the next month's pay or allowance. ISP Policy 85–10–21–696 CR (Nov. 1, 1987, revised July 16, 1990). If an inmate needs further funds for legal expenses, he can obtain approval for debt over $3.50 from the deputy warden with a showing of "exceptional need." *Id.* The stated purpose of this regulation is to preserve prison resources, require inmates to make sound fiscal decisions, and encourage inmate discipline.

---

1. The Honorable Charles R. Wolle, Chief Judge, United States District Court for the Southern District of Iowa.

2. During this same period, the mailroom nevertheless did send out four pieces of Blaise's legal mail. Blaise's account was so severely in arrears because, on October 16, he had charged $50.50 worth of photocopying.

Blaise did not apply to the deputy warden for approval to increase his debt; instead, he proceeded directly to the district court with his § 1983 claim of denial of meaningful access to the courts. The district court first partially granted Blaise his motion for a preliminary injunction, and then, on the issue of meaningful access,[3] granted summary judgment to ISP. The court denied Blaise's motion for amendment of the grant of summary judgment and reaffirmed its decision.

Blaise now appeals the district court's grant of summary judgment to defendants on his § 1983 claim of denial of access to the courts.

## II. DISCUSSION

■ We review a district court's grant of summary judgment applying the same standard as the district court. *Berdella v. Delo*, 972 F.2d 204, 209 (8th Cir.1992). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing Fed.R.Civ.P. 56(c)).

■ In *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the Supreme Court decided that meaningful access to the courts meant that "indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25, 97 S.Ct. at 1496. *Bounds*, however, does not require that inmates be provided with *unlimited* free postage. *Smith v. Erickson*, 884 F.2d 1108, 1111 (8th Cir.1989); *accord Chandler v. Coughlin*, 763 F.2d 110, 114 (2d Cir.1985). We determine the validity of a regulation limiting inmates' access to courts by examining "whether the regulation is 'reasonably related to legitimate penological interests.'" *Smith v. Erickson*, 884 F.2d at 1110 (quoting *Turner v. Safley*, 482 U.S. 78,

89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)).

Factors relevant to this analysis include: (1) whether the governmental objective is legitimate and neutral and the restriction has a rational connection to the asserted goal; (2) whether alternative means of exercising the right remain open to inmates; (3) whether accommodation of the asserted right will significantly affect guards, other inmates, and the allocation of prison resources; and (4) whether ready alternatives to the restriction are available.

*Id.* (quoting *Turner*, 482 U.S. at 89–91, 107 S.Ct. at 2261–63).

Blaise argues that the district court misapplied the *Turner* factors to the regulation, and that the regulation does not withstand examination under *Turner*.[4] We find that the regulation comfortably meets the *Turner* standards.

■ First, the regulation has a rational connection to the legitimate penological goals of preserving prison resources and encouraging sound fiscal decisions and discipline in inmates. ISP is obliged to provide, regardless of budgetary constraints, some "free postage" for legal mail, but is not obliged to provide unlimited postage. Blaise argues that he and his fellow inmates receive no free postage under ISP's regulations, and thus that the regulations do not meet the requirements of *Bounds* and our recent holding in *Hershberger v. Scaletta*, 33 F.3d 955 (8th Cir.1994). We disagree. In *Hershberger*, we held that inmates who were not permitted to work for money, nor provided with any allowance or other form of income, must be provided with one first-class stamp per week for legal mail. *Id.* at 956. The money provided monthly to Blaise by ISP, however, would pay for five first-class stamps per week with change left over, if Blaise chose to so spend it. The fact that ISP provides money that inmates can spend on legal mail rather than

---

3. Blaise brought an additional claim regarding prison regulation of foreign language publications, which he does not appeal and we do not address.

4. Blaise also argues that *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), and not *Turner*, provides the appropriate

standard for review of this regulation. Under our decision in *Smith v. Delo*, 995 F.2d 827, 829–30 (8th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 710, 126 L.Ed.2d 676 (1994), this contention is incorrect, and, following *Smith,* we apply the *Turner* standard.

providing less, or no, money and "free" stamps instead does not mean that ISP is not providing free postage for legal mail. ISP's system actually offers inmates more control over their access to the courts by allowing them to decide how much or little of their allowance they choose to spend on legal mail. We find, therefore, that ISP does indeed provide free postage for legal mail in an amount up to $7.70 a month, depending on the individual inmate's priorities.

In addition, ISP provides protection for inmates who may not be prepared for a filing deadline or the like by offering an "advance" of up to $3.50 on each month's allowance, and exceptions for special cases with approval of the deputy warden.[5] It is clear that, far from systematically blocking inmates' access to the courts, ISP has provided amply for inmates' ordinary legal postage needs and for unforeseen circumstances which may create a temporary need for extra postage. ISP does not offer unlimited postage without a showing of special circumstances to the deputy warden, and is not required to do so by *Bounds*. This system is rationally related to the goal of preserving prison resources by placing some limit on the free postage given to inmates, and to the goal of encouraging inmates to manage their money intelligently by leaving the decision of how to spend their monthly allowance in inmates' own hands.

The second, third and fourth factors overlap with the first. Inmates themselves possess the alternative means to exercise their right to access under this system: they need to set aside money needed for legal postage from their monthly allowance. In addition, in Blaise's case, during the period in which some of his mail was rejected, he was in contact with counsel through visits and telephone calls, which were not restricted. Under the third factor, it is clear that prison

resources would be negatively affected by increasing the relatively generous monthly allowance already provided to inmates, or by creating a separate additional allowance specifically for legal postage. Finally, we do not find a ready alternative to the restriction, which simply sets a monthly maximum of $7.70 on inmates' "free postage."[6] The fact that ISP does not set aside, for instance, $2 of this monthly allowance and earmark it for legal postage does not mean that free postage is not being provided, and such a system would defeat ISP's legitimate goal of encouraging inmates to manage their own funds. We find that the regulation is rationally related to legitimate governmental goals as required by *Bounds* and *Turner*.

Further, Blaise has not shown that he suffered prejudice or actual injury as a result of the regulation. "To assert a successful claim for denial of meaningful access to the courts ... an inmate must demonstrate that he suffered prejudice." *Berdella*, 972 F.2d at 210; *accord Jones v. James*, 38 F.3d 943, 944 (8th Cir.1994); *Hamm v. Groose*, 15 F.3d 110, 112 (8th Cir.1994); *McMaster v. Pung*, 984 F.2d 948, 953 (8th Cir.1993); *and Flittie v. Solem*, 827 F.2d 276, 280 (8th Cir.1987). An exception to this rule applies when "a systemic denial of inmates' constitutional right of access to the courts is such a fundamental deprivation that it is an injury in itself." *Hershberger*, 33 F.3d at 956; *see Jones*, 38 F.3d at 945 n. 4 (no systemic denial when mail to legal organizations only partially restricted); *Sowell v. Vose*, 941 F.2d 32, 35 (1st Cir.1991) (systemic denial when absolute denial of access to all legal materials); *Chandler v. Baird*, 926 F.2d 1057, 1062–63 (11th Cir.1991) (systemic denial when legal materials and assistance made available to all or subgroups of prison population basically inadequate). ISP has not systemically denied legal postage to inmates, but only set a limit

---

5. Blaise argues that the "exceptional circumstances" policy violates the mandate of *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), protecting inmates' legal correspondence from prison inspection. We disagree. First, Blaise has not shown that the procedure of obtaining the deputy warden's approval for extra debt in fact involves mail inspection. Second, Blaise himself never applied for approv-

al from the deputy warden. We thus reject this argument.

6. The alternatives suggested by Blaise, a bulk mail system or a delivery system outside the U.S. Postal Service, would force ISP to bear the costs of unlimited free postage (or the costs of delivery) for inmates.

on the amount of postage it will provide inmates. Blaise himself, even with an account $50 in arrears, was permitted to send four pieces of legal mail during the period at issue in this case.

Blaise argues that he has shown actual injury because he was unable to file appeals of disciplinary decisions to the warden and Department of Corrections, and he could not appeal these decisions to the district court without having first exhausted administrative remedies. *Bugely v. State*, 464 N.W.2d 878 (Iowa 1991), states that "[w]hen prisoners fail to exhaust their administrative remedies because of interference from prison authorities, the administrative remedy is rendered inadequate. In these circumstances we can hardly say that an administrative remedy exists for the claimed wrong. In short, the exhaustion doctrine simply does not come into play." *Id.* at 880. The district court, on receiving a claim unexhausted because of interference, is to remand the claim for further administrative proceedings. *Id.* at 880–81. Blaise thus has a remedy for his disciplinary claims, which is to bring them before the district court with a showing of interference from prison authorities. We therefore find that Blaise has suffered no prejudice or actual injury as a result of the regulation.

## III. CONCLUSION

Because the Iowa State Penitentiary's inmate mail regulation is facially valid and because Blaise suffered no prejudice or actual injury as a result of the regulation, we affirm the district court's grant of summary judgment to the defendants.