Timothy Francis RIPP, Plaintiff,

v.

Janet NICKEL, Marc Clements, Gregory Grams, Al Morris, Anthony Ashworth and William Pollard, Defendants.

No. 10–cv–492–bbc.

United States District Court,
W.D. Wisconsin.

March 14, 2012.

Timothy Francis Ripp, Waupun, WI, pro se.

Jody J. Schmelzer, Wisconsin Department of Justice, Madison, WI, for Defendant.

OPINION and ORDER

BARBARA B. CRABB, District Judge.

The question before the court in this prisoner civil rights case is whether defen-

dant William Pollard is violating plaintiff Timothy Francis Ripp's constitutional right to have access to the courts by failing to provide him materials needed to litigate this case. Because I agree with plaintiff that Pollard is violating this right, I am granting plaintiff's motion to compel Pollard to provide the writing materials and postage that plaintiff needs to respond to defendants' motion for summary judgment and litigate the remainder of this case.

## BACKGROUND

Plaintiff filed this case on August 27, 2010. Dkt. # 1. In an order dated September 22, 2010, I allowed plaintiff to proceed on a claim that defendants disciplined him for threatening to file a lawsuit, in violation of the First Amendment. Dkt. # 6. On June 6, 2011, defendants filed a motion for summary judgment on the ground that plaintiff's speech is not protected by the First Amendment or, in the alternative, that they are entitled to qualified immunity. Dkt. # 16. The court gave plaintiff until August 9, 2011, to file his response. Dkt. # 31.

On July 1, 2011, Wis. Stat. § 301.328(1m) went into effect:

No prisoner may receive more than $100 annually in litigation loans, except that any amount of the debt the prisoner repays during the year may be advanced to the prisoner again without counting against the $100 litigation loan limit. No prisoner may receive a litigation loan in any amount until he or she has repaid a prior loan in full or has made arrangements for repayment.

(Previously, § 301.328 did not include a limit on legal loans. Rather, loans were governed by Wis. Admin. Code § DOC 309.55, which imposed a $200 limit that could "be exceeded with the superintendent's approval if the inmate demonstrates an extraordinary need, such as a court order requiring submission of specified documents.")

On August 4, 2011, plaintiff sent his summary judgment response to the mail room at the Columbia Correctional Institution so that it could be mailed using funds from his legal loan account. At the time, plaintiff had accrued more than $100 in legal loans. (The parties do not identify the amount of plaintiff's legal debt, but plaintiff says that he had a balance of approximately $110 in his legal loan account under the old system. Ripp Decl. ¶ 9, dkt. # 44.) On August 6, 2011, plaintiff's summary judgment materials were returned to him, accompanied by a memorandum dated July 6, 2011, from prison administrators regarding the effect of the new law. The memorandum stated that "legal loan extensions above $100 may be granted" in limited circumstances involving criminal cases, challenges to the legality of confinement and termination of parental rights. No exceptions were listed for litigation of civil rights actions. The Division of Adult Institutions has since issued a policy that identifies 14 exceptions to the $100 limit, dkt. # 34, exh. 108, but there is no dispute that none of these exceptions apply to plaintiff.

On August 10, 2011, plaintiff filed a letter with the court in which he explained why he was unable to file his summary judgment materials. Dkt. # 32. Plaintiff was able to file the letter because the Columbia prison allowed him to have one envelope, one ounce postage and two sheets of paper each week. Ripp Decl. ¶ 13, dkt. # 44. However, his summary judgment materials were approximately one hundred pages, so this postage was not sufficient to mail those documents. *Id.* In their response to plaintiff's letter, defendants acknowledged that prison administrators had denied postage to plaintiff,

but they justified the denial under Wis. Stat. § 301.328(1m). Dkt. # 33.

On September 9, 2011, the court appointed counsel for plaintiff for the limited purpose of determining whether plaintiff was being denied access to the courts. Dkt. # 36. On October 6, 2011, plaintiff was transferred to the Waupun Correctional Institution, where he is not provided any writing supplies, envelopes, postage or photocopies. Ripp Decl. ¶ 13, dkt. # 44. (In a footnote in his brief, defendant Pollard says that prisoners in "specified statuses" at the Waupun prison receive one stamped envelope and two sheets of paper each week, but that plaintiff is not on any of those statuses. Dft.'s Br., dkt. # 46, at 4 n. 1.) On November 21, 2011, plaintiff filed a motion to add William Pollard, the warden of the Waupun prison, as a party in his official capacity, which the court granted. Dkt. ## 41 and 45. (Because Pollard is the only defendant relevant to plaintiff's motion, I will refer to him simply as "defendant" for the remainder of the opinion.) The same day, plaintiff filed his motion to compel, which is now fully briefed.

## OPINION

■ Both the law and the facts relevant to plaintiff's motion are relatively straightforward. The Constitution guarantees prisoners a right to have "meaningful access to the courts." *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir.2004). Although the exact source of this right has not always been clear, *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) (noting that Court has grounded right in Article IV privileges and immunities clause, First Amendment petition clause, Fifth Amendment due process clause and Fourteenth Amendment equal protection and due process clauses), the importance of the right is obvious, particularly for prisoners.

■ "Because a prisoner ordinarily is divested of the privilege to vote, the right to file a court action might be said to be his remaining most 'fundamental political right, because [it is] preservative of all rights.'" *McCarthy v. Madigan*, 503 U.S. 140, 153, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220 (1886)). In other words, without the right to have access to the courts, any other rights a prisoner has are illusory because he has no way to enforce them.

In applying the right of access to the courts in the prison context, the Supreme Court has held that prison officials may not arbitrarily prevent prisoners from litigating a federal action, *Ex parte Hull*, 312 U.S. 546, 549, 61 S.Ct. 640, 85 L.Ed. 1034 (1941), or from seeking assistance in litigation. *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). In addition to these prohibitions on interference, the Court has held that prison officials have an affirmative duty to provide prisoners "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). *See also Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir.2009) ("[T]he right of access to the courts requires prison officials to provide prisoners with the necessary tools to attack their sentences, directly or collaterally, and to challenge the conditions of their confinement.") (internal citations omitted). In *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the Court explained that a prisoner cannot prove a violation of his right of access to the courts unless he identifies a nonfrivolous claim that was lost or is being impeded, but the Court did not disavow the right itself. *See also Christopher*, 536 U.S. at 412–13, 122 S.Ct. 2179 (in one type of access to courts claim, plaintiff alleges that

864

"official action is presently denying an opportunity to litigate").

 Defendant's refusal to provide assistance to plaintiff in this case is a clear violation of one of the requirements set forth in *Bounds*, 430 U.S. at 824–25, 97 S.Ct. 1491: "indigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them." Of course, a prisoner does not have a right to "an immediate and unlimited supply of" these items, *Lebron v. Armstrong*, 289 F.Supp.2d 56, 61 (D.Conn.2003), but if he does not have the means to buy them himself, prison officials must provide those supplies that are essential for litigating his case. *Gentry v. Duckworth*, 65 F.3d 555, 558 (7th Cir.1995) ("Part of meaningful access is furnishing basic scribe materials for the preparation of legal papers.... Of course, prisoners are not entitled to limitless supplies of such materials, merely to that amount minimally necessary to give them meaningful access to the courts."). *See also Hershberger v. Scaletta*, 33 F.3d 955 (8th Cir.1994) (indigent prisoners must be provided free postage); *Gluth v. Kangas*, 951 F.2d 1504, 1508–09 (9th Cir.1991) (declaring unconstitutional prison policy that required indigent prisoners to choose between legal supplies and hygiene items); *Gramegna v. Johnson*, 846 F.2d 675, 677 (11th Cir.1988) ("[T]he states must permit the prisoner meaningful access to the postal system as this is typically the only manner in which a prisoner may communicate with the court."); *Chandler v. Coughlin*, 763 F.2d 110 (2d Cir.1985) (reversing dismissal of claim that prison officials denied access to courts with policy limiting postage for indigent prisoners to one ounce letters); *Collins v. Goord*, 581 F.Supp.2d 563, 580 (S.D.N.Y.2008) (defendants not entitled to summary judgment on claim that prison officials denied photocopies to indigent prisoner); *Hendon v. Ramsey*,

478 F.Supp.2d 1214, 1220 (S.D.Cal.2007) ("[E]ven if 100 percent of Plaintiff's income is recouped for filing fees, he will not be denied access to paper, writing instruments, or postage because the government is required to provide these materials to indigent inmates.").

 In *Lewis*, 518 U.S. at 354, 116 S.Ct. 2174, the Court stated that prisoners do not have the right to "litigate effectively," but it did not contradict the holding from *Bounds* that prisoners are entitled to basic scribe materials. *See also Pruitt v. Mote*, 503 F.3d 647, 657 (7th Cir.2007) ("[A] prisoner's right of access to the courts does not guarantee the effective presentation of his civil claims," but it "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers.") (internal quotations omitted). Further, although some courts have suggested that the right of access to the courts does not extend past the pleading stage, *e.g.*, *Nordgren v. Milliken*, 762 F.2d 851, 855 (10th Cir.1985), the Court of Appeals for the Seventh Circuit has rejected that view. *Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir.2006) ("We do not agree that *Lewis* confines access-to-courts claims to situations where a prisoner has been unable to file a complaint or an appeal."). That is the only reasonable interpretation of Supreme Court precedents. The right to have access to courts means nothing if a prisoner can file a complaint, but cannot carry the lawsuit to a resolution. *Toussaint v. McCarthy*, 926 F.2d 800, 810–11 (9th Cir.1990) (Wiggins, J., concurring in part and dissenting in part) ("[W]ithout legal assistance or library access at all stages of a proceeding, an inmate's right of access to the courts is not effective or meaningful.").

 It is undisputed that defendant is refusing to provide postage to plaintiff so that plaintiff can mail his summary judg-

ment materials to the court and that plaintiff has no money in his inmate trust fund account to purchase his own postage. (The parties do not say whether plaintiff renewed his request for postage after being transferred to the Waupun prison, but the parties seem to agree that plaintiff is not entitled to any postage under Waupun prison policy.) Because his status is "involuntary unassigned," he makes only $8 each month, all of which is immediately deducted from his account for various purposes, including court filing fees, his release account and medical co-payments. Ripp. Decl. ¶¶ 11–12 and exh. A, dkt. # 44.

Without assistance from defendant, plaintiff will be unable to file his summary judgment materials or otherwise continue litigating this case, so he has satisfied the "actual injury" requirement from *Lewis*. *Simkins v. Bruce*, 406 F.3d 1239, 1244 (10th Cir.2005) (inability to respond to summary judgment motion is "actual injury" under *Lewis* ). Plaintiff need not show at this stage that he will prevail on the underlying claim, only that the claim is not frivolous. *Walters v. Edgar*, 163 F.3d 430, 434 (7th Cir.1998) (plaintiff need not show "that had it not been for his being denied access to the courts, he would have won at least one court case"). I concluded when I screened the complaint that plaintiff stated a claim upon which relief may be granted, so that requirement is met as well.

Defendant does not directly dispute any of the above discussion and he does not argue that plaintiff's summary judgment materials are unreasonably voluminous. Instead, he devotes much of his brief to defending the constitutionality of Wis. Stat. § 301.328(1m), which places a $100 limit on prisoner legal loans. However, as plaintiff points out in his reply brief, his motion does not challenge the statute itself, only defendant's chosen method of implementing the statute. Plaintiff is not asking defendant to increase his legal loan

limit, but to provide him the materials he needs to bring this case to a resolution. It is up to defendant how he insures that plaintiff receives those materials, that is, whether he lends plaintiff the funds he needs to purchase the materials himself or simply provides the materials to plaintiff. Defendant does not argue that either of these options would place an undue economic burden on the state. *Bounds*, 430 U.S. at 825, 97 S.Ct. 1491 (prison officials may consider "economic factors ... in choosing the methods used to provide meaningful access").

Defendant acknowledges that, in *Gentry*, 65 F.3d 555, the court of appeals reversed a decision that dismissed a claim in which the prisoner alleged that officials refused to give him the materials he needed to comply with the filing requirements of a state court. However, defendant says that *Gentry* is distinguishable because, in this case, all the materials plaintiff needs are available from the prison canteen. That argument is not persuasive. In *Gentry*, the court did not say that prison officials satisfy their constitutional obligation simply by making legal supplies available for purchase, without regard for whether the prisoner is indigent. In fact, the case includes no discussion regarding the reason prison officials refused to provide the prisoner those supplies, that is, whether it was because the prison did not stock the supplies or because the prisoner could not afford to purchase them. In any event, the Supreme Court made it clear in *Bounds* that prison officials must provide indigent prisoners necessary legal supplies, so any contrary reading of *Gentry* necessarily fails.

Finally, defendant relies on *Lewis v. Sullivan*, 279 F.3d 526 (7th Cir.2002), for the proposition that prisoners are not entitled to a "subsidy" to exercise their constitutional rights, and *Lindell v. McCallum*,

352 F.3d 1107 (7th Cir.2003), for the proposition that prisoners must "decide which of his legal actions is important enough to fund." However, neither of these cases supports a rule that prison officials may deny a prisoner necessary legal supplies in the middle of litigating a case.

In *Lewis*, the court upheld the constitutionality of 28 U.S.C. § 1915(g), which requires prisoners to prepay the full filing fee for a federal civil action if three or more of his previous lawsuits have been dismissed as frivolous or for failure to state a claim upon which relief may be granted, unless the prisoner is in imminent danger of serious physical harm. The court wrote: "Section 1915(g) singles out only a subset of prisoners—those who have established, by their own conduct, that they are among the abusers of the judicial system. Requiring persons who have abused the forma pauperis privilege in the past to pay in the future is a sensible and modest step." *Lewis*, 279 F.3d at 529. That holding has no bearing on this case because plaintiff is not subject to § 1915(g). Although defendant points to other cases that plaintiff has filed in other courts, he does not argue that any of them are frivolous or fail to state a claim upon which relief may be granted.

In dicta, the court stated in *Lewis*, 279 F.3d at 528, that "there is no constitutional entitlement to subsidy." However, the court could not have meant that statement to be a bright line rule because it later discussed instances in which litigants *are* entitled to subsidies by the government, but concluded that they were distinguishable. *Id.* at 529. *See also id.* at 530 ("A federal law that knocked out prisoners' ability to obtain redress in situations where they are victims of official misconduct, yet lack any non-judicial means to protect themselves, would have to be set aside as unconstitutional."). The court did not discuss whether prison officials have

an obligation to provide prisoners legal supplies and it did not even cite *Bounds*, so *Lewis* is not instructive.

In *Lindell*, the district court dismissed a prisoner's complaint because he failed to show that he would have the funds necessary to prosecute it in light of various other lawsuits he had pending. The court of appeals reversed on the ground that the district court had no authority to dismiss the case for that reason. In dicta, the court stated that the prisoner would not be entitled under the Constitution to exceed his $200 limit on legal loans because "like any other civil litigant, he must decide which of his legal actions is important enough to fund." *Id.* at 1111. The court made a similar observation in *Lewis*, 279 F.3d at 530, when it stated that it was permissible for Congress in § 1915(g) to require "prisoners [to] use their options carefully and responsibly."

These statements in *Lindell* and *Lewis* provide support for a view that prisoners do not have a right to receive assistance from prison officials to file an unlimited number of lawsuits regardless of the cost. Other courts have taken a similar view that prisoners may be required to plan ahead and to choose carefully which disputes they wish to litigate. *E.g., Roller v. Gunn*, 107 F.3d 227, 233 (4th Cir.1997) ("Requiring prisoners to make economic decisions about filing lawsuits does not deny access to the courts; it merely places the indigent prisoner in a position similar to that faced by those whose basic costs of living are not paid by the state.").

Because neither *Lindell* nor *Lewis* includes any discussion of *Bounds* or legal supplies, it is not clear whether or to what extent they apply to the provision of those supplies. However, even if I assume that prison officials may rely on the logic of *Lindell* and *Lewis* to deny a request for supplies in some circumstances, that logic

does not apply in this case. Defendant says that plaintiff's "current inability to obtain legal materials is a direct result of his choices on how and when to spend this money," Dft.'s Br., dkt. # 46, at 8, but defendant fails to explain how plaintiff could have foreseen his current predicament and made choices accordingly. It is undisputed that plaintiff still had more than $100 in his legal loan account when he sought to mail his summary judgment materials. The problem was not that plaintiff was squandering the resources he had, but that the state changed the rules half way through this lawsuit. I decline to place on pro se litigants the burden of anticipating legislation that may limit their future ability to prosecute a lawsuit.

*Bounds* established a clear requirement on prison officials to provide prisoners the legal supplies necessary to litigate a civil rights case. Because defendant is failing to comply with that requirement, I am granting plaintiff's motion to compel.

### ORDER

IT IS ORDERED that plaintiff Timothy Francis Ripp's motion to compel defendant William Pollard to provide plaintiff basic scribe materials, dkt. # 42, is GRANTED. Defendant may have until March 21, 2012, to provide plaintiff the postage he needs to mail his summary judgment materials to the court. Plaintiff may have until March 28, 2012, to file his summary judgment materials with the court. Defendants may have until April 9, 2012, to file their reply materials. For the remainder of the case, defendant Pollard must provide plaintiff the legal supplies reasonably necessary to litigate the case, including writing utensils, paper, photocopies, envelopes and postage.

FURTHER, IT IS ORDERED that attorneys David Harth, Andrew Baird Coursin and Truscenialyn Brooks have fulfilled their obligation to represent plaintiff for the limited purpose discussed in the September 9, 2011 order. Plaintiff is now proceeding pro se.