Willie B. HADLEY, Jr., Plaintiff,

v.

Howard PETERS, et al., Defendants.

No. 93–3175.

United States District Court, C.D. Illinois, Springfield Division.

Jan. 26, 1994.

Willie B. Hadley, Jr., pro se.

S. Angela Meyers, Karen L. McNaught, Asst. Attys. Gen., Springfield, IL, for defendants.

## OPINION

RICHARD MILLS, District Judge:

Willie Hadley, a state prisoner, has brought this civil rights action *pro se.*

Summary judgment is granted in favor of the defendants.

In fact, the court is tempted to sanction the plaintiff, a seasoned litigator, for pursuing such patently frivolous claims and for

arguing against the existence of well-established case law. The plaintiff is cautioned to perform some basic legal research BEFORE filing future pleadings, motions or lawsuits. Henceforth, notwithstanding the plaintiff's indigence and his *pro se* status, the court will not hesitate to impose sanctions for groundless litigation.

The plaintiff claims that the defendants, various Graham Correctional Center officials, violated the plaintiff's constitutional rights by conspiring to: deny him due process in prison disciplinary proceedings, retaliate against him for his litigation, discriminate against him because of his race, subject him to cruel and unusual conditions of confinement, and interfere with his access to the courts. This matter is before the court for consideration of the defendants' motion to dismiss, which the court construes as a motion for summary judgment.[1] For the reasons stated in this order, the motion will be allowed.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir.1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1985). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir.1988). A "metaphysical doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Disputed facts are material only if they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507–08 (7th Cir.1992).

## FACTS

The plaintiff is a state prisoner, confined at the Graham Correctional Center at all times relevant to this action. The defendants include D.O.C. Director Howard Peters and eighteen Graham Correctional Center officials.[2]

The following facts are undisputed for purposes of this motion: On April 26, 1992, the plaintiff was employed as a janitor in the health care unit. On that date, the plaintiff made a request of the defendant Nurse Sanders to call two inmates over to the health care unit so that they could discuss "some legal matters." The following day, Sanders issued the plaintiff a disciplinary report charging him with having violated prison rule 103 (Bribery and Extortion). Sanders is white; the plaintiff is black. The defendant Branhan served the plaintiff with the disciplinary report.

On April 29, 1992, the plaintiff was interviewed by the defendant Vunetich, a hearing investigator. After their discussion, Vunetich reportedly told the plaintiff that it was his conclusion there had been no rule violation.[3]

On April 30, 1992, the plaintiff appeared before the institutional Adjustment Committee to contest the charges. The Committee

---

1. *See* Docket Entry of December 13, 1993; Fed. R.Civ.P. 12(c).

2. The defendant "Jane Doe" was not served.

3. Curiously, Vunetich's signature appears on the original disciplinary report and all re-writes, suggesting that Vunetich, in fact, validated the charge of bribery. However, the court will accept as true the plaintiff's uncontroverted assertion that Vunetich believed him innocent of any institutional infraction.

(comprised of the defendants Stiff and Tribble) recommended that further investigation be conducted and that additional information be added to the report.

On May 4, 1992, the plaintiff approached the defendant Fox to inquire why the disciplinary ticket had not been expunged. Fox allegedly became irate, made racially derogatory remarks, and told the plaintiff that he would not be allowed to get away with disrespecting a white woman.

On May 5, 1992, the defendant Gabean, another internal affairs investigator, interrogated the plaintiff. The plaintiff asserted that the ticket had been written in retaliation for the plaintiff's lawsuit against Graham officials, and that a conspiracy was afoot. Despite the plaintiff's protests of innocence, Gabean issued a revised disciplinary report on May 12, 1992, confirming the charges of bribery and extortion. The plaintiff made a fruitless, renewed effort the next day to convince the hearing investigator that the charges were false, causing the plaintiff stress and exacerbating his medical complaints.

Prior to the initiation of disciplinary action, the plaintiff had been given a medical "lay-in" due to a burst hemorrhoid. When the plaintiff returned to work on an unspecified date, the defendant Cearlock, the health care unit administrator, dismissed the plaintiff from his job as a porter. Cearlock explained, "You were way out of line, Hadley, talking to Diana like that so I'm gonna have to let you go."

The plaintiff wrote letters to the defendants Peters (Director of the Department of Corrections), Dobucki (Graham Warden), Baker and Sassatelli (Assistant Wardens) complaining of his "retaliatory" treatment; however, those individuals took no action on the plaintiff's correspondences.

On May 15, 1992, the plaintiff again appeared before the Adjustment Committee. The matter was referred once again back to Internal Affairs because the report inaccu-rately stated that the plaintiff already had been found guilty of bribery.

On May 18, 1992, the plaintiff received the third re-written disciplinary report. The defendant Gabean wrote the report although he had not been present in the Medical Unit at the time of the events giving rise to the disciplinary action. The defendant Randolph reviewed and signed the purportedly deficient report.

On May 21, 1992, the plaintiff was summoned before the Adjustment Committee (composed of the defendants Stiff and Reid) for hearing on the charges. A "Jane "Doe" also was present in the hearing room. Rejecting the plaintiff's arguments, the Committee found him guilty of bribery and imposed a punishment of fifteen days in segregation and thirty days demotion to "C" grade. The Committee further recommended that the plaintiff be transferred to a maximum security prison.

The plaintiff was placed in segregation on May 21, 1992, at 1:15 p.m. The segregation cell was dirty and dusty, had a torn mattress and lacked heat. Cold air blew from the vents. The plaintiff's daily requests for gloves were denied. The plaintiff had no bedding until 10:30 that evening and was completely denied a pillow.[4] In addition, the shower was "filthy," with mildew, clumps of hair, and cigarette butts on the floor. The plaintiff was not permitted to make telephone calls to his family while in the segregation unit.

According to the plaintiff, the defendants repeatedly denied his requests for law books, typewriters, assistance and legal forms while the plaintiff was in segregation, necessitating his filing of a motion for an extension of time so that an appeal would not be dismissed.[5] Additionally, in *Hadley v. Peters* (Case Number, 90–1207), Peoria Division Chief Judge Mihm ruled the plaintiff to show cause why judgment should not be entered against the plaintiff for failure to respond to a pending

---

4. According to the defendant Stiff, an inmate transferred to segregation packs his own property, including clothing and bed linens, and is supposed to carry that personal property to the segregation cell with him.

5. The defendants deny this allegation; however, the court will resolve the factual dispute in favor of the plaintiff for purposes of this motion only.

motion for summary judgment. The plaintiff subsequently submitted opposing materials, and the case was decided on its substantive merits.

On May 22, 1992, the defendant Baker advised the plaintiff that he was not going to concur in the recommendation to transfer the plaintiff to a maximum security institution; however, he informed the plaintiff that he intended to recommend job reassignment and continued placement in segregation. The plaintiff was granted an early release from segregation on June 1, 1992.

On October 25, 1992, the plaintiff was attacked by his cellmate (Byman) for calling him a "bum" after having tolerated Byman's purported lack of personal hygiene for months. The plaintiff required hospitalization for his injuries. The prison staff failed to prevent the altercation although they allegedly knew that the plaintiff had a history of conflict "with just about all his prior cellmates."

Despite the fact that the plaintiff was the only inmate harmed, he, too, received a disciplinary report from the defendant Fox for fighting. The Adjustment Committee, comprised of the defendants Stiff and Davison, found the plaintiff guilty of the charge and imposed eight days in segregation [or time already served]. The defendant Dobucki approved the disciplinary decision.

## DISCUSSION

No material facts are in dispute, and the court concludes that the defendants are entitled to judgment as a matter of law. Even viewing the record in the light most favorable to the plaintiff, the court finds that the record raises no triable issue that any constitutional violation occurred. Accordingly, the defendants' motion for summary judgment will be granted. Furthermore, the plaintiff is cautioned of the possible repercussions for pursuing frivolous litigation.

## I. DISCIPLINARY PROCEEDINGS AGAINST THE PLAINTIFF

### A. Disciplinary Proceedings for Bribery

■ The disciplinary proceedings did not violate the plaintiff's constitutional rights. In prison disciplinary proceedings, an inmate is entitled to: (a) receive advance written notice of the charges against him; (b) appear in person before an impartial hearing body to contest the charges; (c) call witnesses and present documentary evidence in his defense (subject to the discretion of correctional officials); and (d) receive a written statement of the reasons for the disciplinary action taken. *Wolff v. McDonnell,* 418 U.S. 539, 563–67, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974); *Cain v. Lane,* 857 F.2d 1139, 1145 (7th Cir. 1988).

■ With respect to the first disciplinary incident,[6] there is no question that the plaintiff was given notice of the charges, was allowed to contest the charges (and, in addition, was granted more than one continuance for further investigation and proper drafting of the disciplinary report), requested no witnesses, and received an adjustment committee summary. The plaintiff received all the procedural safeguards mandated by the Constitution.

The plaintiff maintains that a non-impartial hearing officer participated in the disciplinary proceedings. According to the plaintiff, a third, still-unidentified, hearing officer, "Jane Doe," is a friend of Sanders' and therefore should not have served on the Adjustment Committee. An affidavit from one of the hearing officers attesting as to the reason for Doe's presence in the hearing room would have proved helpful. However, it is sufficient to note that Doe is not listed on the Adjustment Committee summary, which is signed by only two officers (as were the two preceding hearings). The plaintiff apparently is mistaken in his belief that Doe participated in the Committee's decision-making process. Doe's mere presence in the room

6. The court will review only the third and final adjustment committee proceedings. Any perceived defects in the previous, superseded hearings were mooted by the re-issuance of an amended disciplinary report and subsequent rehearing.

where the hearing was held does not implicate the Constitution.

■ The plaintiff's charge that the disciplinary action was motivated by racial or retaliatory animus cannot survive summary judgment. The fact that Sanders is white and the plaintiff is black is, by itself, insufficient to support an inference of race discrimination. *Davis v. Frapolly*, 717 F.Supp. 614, 616 (N.D.Ill.1989), *relying on Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir.1982). Likewise, while Fox's alleged racial epithets and racist remark were unprofessional and offensive, Fox played no role in the disciplinary proceedings. A presumably impartial hearing body (formed by one white officer and one black officer) heard the evidence and decided the plaintiff's guilt.

■ The plaintiff was not deprived of due process by receiving a re-written disciplinary report from the investigator, rather than the employee who observed the alleged institutional violation. To the contrary, prison regulations implicitly authorize an internal affairs investigator to re-issue conduct reports:

If as a result of the investigation it is necessary to amend or modify the original charges, the committed person shall be issued a revised disciplinary report.

Ill.Admin.Code, tit. 20, § 504.50(c)(5) (1988). The plaintiff can show no harm from receiving an amended disciplinary report from an investigator rather than the original employee.

■ Furthermore, allegations of false disciplinary reports do not state a claim where due process is afforded. *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir.1984). The Seventh Circuit Court of Appeals has reasoned that the due process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses. A hearing before a presumably impartial Adjustment Committee terminates an officer's possible liability for the filing of an allegedly false disciplinary report. *Hawkins v. O'Leary*, 729 F.Supp. 600, 602 (N.D.Ill.1990), *relying on Hanrahan v. Lane, supra*, 747 F.2d at 1141. The procedural requirements of a disciplinary hearing protect prisoners from arbitrary actions of prison officials.

*McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir.1987).

■ The plaintiff's argument that there was an inadequate foundation for the guilt finding also is without merit. It is important to note that this court does not sit in review of the correctness of prison disciplinary decisions. Assuming that due process was met (as the court has found here, *see supra*), there is sufficient basis for a reviewing court to approve the disciplinary board's decision if "some evidence" supports that decision. *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985); *Hanrahan v. Lane*, 747 F.2d at 1141. In the case at bar, the record is satisfactory.

Nurse Sanders issued the following original disciplinary report:

On above date and approx. time Inmate Hadley C–76018 approached this writer in med. room. Asked if he could get garbage. Hadley then stated, "I have a problem. This guy is lending me some money but he wants to put it in my sister's name. It's a matter of trust." Writer stated, "He doesn't trust you? You don't trust him?" Hadley stated, "No, it's not like that. You see, he's getting the money from his mom. You know how it is. It's an election year, you know. $1,500 is a lot of money." Writer then stated, "What does that have to do with me, Hadley?" [Hadley responded], "You don't get it, do you? It's a bribe. Politicians need money these days. I get out in December & I want to get out of here sooner. There's two guys I need to talk to before this guy who's lending me money goes on a visit and talks to his mom. Could you call these guys over?" Writer then told Hadley to never approach writer again with this matter, that I had no intention of helping him. Hadley then left the room.

Sanders' accompanying incident report essentially re-stated the above observations and noted that she did not want to jeopardize her job.

After several remands and further investigation, the defendant Gabean issued the following, final revised conduct report:

On 4/30/92 you were placed under investigative status by the Adjustment Committee and referred to the Internal Affairs Office for investigation for the charge of 103– Bribery/Extortion. As a result of that investigation, with eyewitness staff testimony that you approached a nurse in the medical unit and made reference to bribing a politician. And that you tried to get the nurse to get other inmates to the medical unit to assist you in this manner. This puts you in violation of above-stated rule infraction.

The Adjustment Committee's May 21, 1992, summary recorded the following proceedings:

IDR was read, viol. of 103 C Bribes and Extortion. Inmate states he's not guilty and feels there is no rule violation. Inmate made no defense, he indicates he needs to make no defense. The I.A. Affairs Report was reviewed by the Comm. Inmate was placed in investigative status on 4–3–92. This IDR was remanded by Comm. for re-write on 5–12–92. The nurse in incident wrote an Incident Report which was reviewed.

After considering the available information, the Committee found the plaintiff guilty of the offense charged, rejecting his testimony that Sanders had invented the incident to protect herself in case the plaintiff was attempting to set her up. Their stated reasons for the decision were as follows:

Based on the information presented to the Committee which consists of IDR written by Internal Affairs, also review of Internal Affairs report of the incident. The Inmate offered no defense as to this incident. The committee has reviewed the incident report of the employee involved in incident. Serious nature of the charge warrants this discipline.

While another body might not have found a violation, the record contains "some facts" to support the finding that the plaintiff attempted to engage Sanders' assistance in his efforts to bribe a politician.

It is irrelevant that one hearing investigator may have believed the charges to be groundless. The plaintiff had no protected interest in the Adjustment Committee adopt-

ing Vunetich's reasoning. The issue boiled down to a simple credibility finding. The Adjustment Committee plainly believed Sanders and the investigators rather than the plaintiff, who has a shockingly lengthy record of myriad disciplinary offenses, as evidenced by the defendants' exhibits. The record contains sufficient evidence to substantiate the guilt finding, and the Committee's statement of reasons is satisfactory.

**B. Disciplinary Proceedings for Fighting**

█ Likewise, the second disciplinary proceedings, for fighting, satisfied due process. The conduct report read:

Inmate Hadley C–7018 was placed in segregation under investigation status on 10–25–92. As a result of that investigation with reliable confidential source information that inmate Hadley was involved in a physical altercation in housing unit twenty-two, Cell thirteen B-wing with inmate Byman N–70679, putting inmate Hadley in violation of the above rule.

The Adjustment Committee summary stated:

Inmate was read IDR violation # 301 Fighting. Inmate pleads not guilty. He says he was not fighting but was attacked by 2 inmates Byman N–70679 and another inmate named Ron. Hadley says there was a verbal confrontation and that Hadley had no opportunity to fight or even defend himself.

The Committee went on to find the plaintiff guilty of fighting, reasoning:

Guilt was based on fact inmate was seen at HCU requiring stitches and redness of eye. Also guilt based on conclusions of investigation by Internal Affairs which included information received from reliable confidential sources which are being kept confidential for the safety & security of the institution and of the sources.

The fact that the plaintiff lost the fight and that the other inmate was not injured does not exonerate the plaintiff from brawling. The plaintiff's allegations in his complaint are inconsistent with his testimony at the hearing and, in any case, concede that he pro-

voked the altercation by insulting his cellmate.

 The plaintiff challenges the use of confidential informants. However, the court notes that inmates do not have a constitutional right to confront or cross-examine witnesses against them at disciplinary hearings. *Mendoza v. Miller,* 779 F.2d 1287, 1292 (7th Cir.1985); *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986). Because the defendants have indicated that the identities of the witnesses were withheld for security reasons, they have articulated a legitimate reason for keeping that information confidential. The defendants, furthermore, have stated that the confidential informants' testimony was reliable—they were eye witnesses to the fight. *Id.,* 779 F.2d at 1293; *Dawson v. Smith,* 719 F.2d 896, 899 (7th Cir.1983), *cert. denied,* 466 U.S. 929, 104 S.Ct. 1714, 80 L.Ed.2d 186 (1984). The court is particularly reluctant to question the use of confidential information since that additional evidence is somewhat cumulative of the plaintiff's own admission.

## II. PLAINTIFF'S FAILURE TO PROTECT ARGUMENT

 The plaintiff's claim that the defendants breached a constitutional duty by failing to protect him from the "assault" is equally without merit. While inmates are entitled to reasonable protection from harm, prison officials cannot be expected to eliminate the possibility of all attacks. The prison setting is potentially dangerous and sometimes explosive. Violence is unfortunately endemic in American prisons. *Hibma v. Odegaard,* 769 F.2d 1147, 1159 (7th Cir.1985). The defendants cannot be held liable for their inability to prevent the unexpected eruption described here, particularly since the plaintiff appears to have been the instigator of the altercation.

The plaintiff argues that the defendants had "constructive" notice that he might have been in danger due to the plaintiff's history of conflicts with his cellmates. However, Eighth Amendment liability requires actual notice of impending harm, or total unconcern for an inmate's welfare, coupled with a pervasive risk of violence. *McGill v. Duckworth,*

944 F.2d 344 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992). Here, the record demonstrates no such warning. The court, furthermore, is compelled to observe that the plaintiff himself bears the brunt of the responsibility if he is unable to live peaceably with any of his cellmates. Prison officials cannot be held liable for problems directly caused by the plaintiff's own contentious nature.

## III. CONDITIONS OF CONFINEMENT IN THE SEG UNIT

 Turning to the conditions of confinement in the segregation unit, the court finds as a matter of law that the plaintiff's deprivations did not rise to the level of an Eighth Amendment violation. Although the plaintiff may have experienced some unpleasantness staying in the dirty segregation unit for two relatively brief stints, he alleges no physical harm as a result of his confinement. In fact, the defendant Stiff reports in his affidavit that the segregation unit was monitored daily "to ensure a safe, secure and sanitary" environment; he further states that the plaintiff never complained of the conditions there.

The Seventh Circuit Court of Appeals has repeatedly held that temporary conditions such as those the plaintiff complains of here do not amount to subjection to "cruel and unusual punishment." *See, for example, Johnson v. Pelker,* 891 F.2d 136, 138–39 (7th Cir.1989); *Harris v. Fleming,* 839 F.2d 1232, 1235–36 (7th Cir.1988) (confinement in a "filthy, roach-infested" cell without articles of hygiene for five to ten days did not violate the Eighth Amendment); *see also Bono v. Saxbe,* 620 F.2d 609, 613 (7th Cir.1980) (generally harsher conditions in segregation unit do not violate the Eighth Amendment).

 The alleged lack of heat did not amount to a hardship of constitutional magnitude. While neither party has submitted prison records regarding temperatures in the facility between May 21, 1992, and June 1, 1992, the court takes judicial notice from the public library's *Local Climatological Data* (monthly summary of the National Service Office) that temperatures in this area and around those dates ranged from 57 to 84

degrees Fahrenheit. Temperatures inside the prison, which must have been even warmer, could not have been unbearably cold.

■ Furthermore, the denial of telephone privileges for ten days is not a matter of constitutional dimension. "Prisons are not required to provide and prisoners cannot expect to receive the services of a good hotel." *Harris,* 839 F.2d at 1235. Even accepting the plaintiff's allegations as true, his placement in segregation does not state a cause of action under 42 U.S.C. § 1983.

## IV. ACCESS TO COURTS CLAIM

■ The alleged denial of legal materials in the segregation unit did not deprive the plaintiff of meaningful access to the courts. A plaintiff seeking damages for denial of access to the courts must show prejudice. *Shango v. Jurich,* 965 F.2d 289 (7th Cir.1992). Such an allegation must be more than merely conclusory; a complaint is inadequate if it "offers no specific facts to support these allegations—no court dates missed; no inability to make timely filings; no denial of legal assistance to which he was entitled; and no loss of a case which could have been won." *Id.*

Even if the defendants did refuse to honor the plaintiff's requests for legal assistance [which they deny], the plaintiff has not demonstrated any detriment to his litigation. Certainly, the plaintiff's appeal was not harmed by the mere necessity of filing a motion for an extension of time. Moreover, the court's docket shows that the plaintiff was able to prepare an opposing brief and memorandum of law in Case Number 90–1207, belying his claim that he had insufficient legal access.[7]

## V. TERMINATION OF PLAINTIFF'S JOB ASSIGNMENT

■ The plaintiff's discharge from his position as hospital porter did not violate his constitutional rights. The plaintiff had no protected interest in his job assignment, *see Wallace v. Robinson,* 940 F.2d 243, 248 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1563, 118 L.Ed.2d 210 (1992); nor was he entitled to procedural due process in conjunction with his termination. *Id.* "Illinois does not give every prisoner a right to hold a job, or any particular job.... [N]o statute, regulation, or practice with a force of a regulation curtails the discretion of prison officials to assign a prisoner to any job on whim." *Wallace,* 940 F.2d at 244–45. It was well within the defendant Cearlock's prerogative to summarily discharge the plaintiff as a result of his encounter with Sanders, or even [as the plaintiff contends], because they simply "didn't want him" to work there.

## VI. CONSPIRACY/RETALIATION CLAIM

■ Finally, the plaintiff's catch-all allegation that the defendant Dobucki and his subordinates have conspired to retaliate against him because of his litigation is wholly unsupported. No evidence supports the plaintiff's charge that a prison-wide conspiracy exists to punish him for his lawsuits. *See Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432, 436 (7th Cir.1986), *cert. denied,* 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987) ("A party may not cry 'conspiracy' and throw himself on the jury's mercy." There must be facts from which a jury could conclude that there was a conspiracy.).

The court recognizes that retaliation for the exercise of a constitutionally protected right is actionable under 42 U.S.C. § 1983, even if the act, if taken for a different reason, would have been proper. *See Matzker v. Herr,* 748 F.2d 1142, 1150 (7th Cir.1984). However, alleging merely the ultimate fact of retaliation is insufficient. *Benson v. Cady,* 761 F.2d 335, 342 (7th Cir.1985). Here, the record does not raise a triable inference that the plaintiff was the victim of retaliation.

---

7. By Order of July 2, 1992, Chief Judge Mihm granted the defendants' motion for summary judgment on substantive grounds, and not because the plaintiff had missed any deadlines. The Seventh Circuit Court of Appeals affirmed the district court's decision in an unpublished order dated November 18, 1993, again, on substantive rather than procedural grounds. 12 F.3d 1100. The plaintiff lost his case because it had no merit, and not due to a denial of legal materials.

An inmate cannot insulate himself from adverse prison action simply by filing multiple lawsuits against the prison. Otherwise, correctional officials would be powerless to exert any control over the plaintiff, a prolific litigator. The plaintiff has not set forth a chronology of events from which retaliation reasonably could be inferred. *See Murphy v. Lane,* 833 F.2d 106, 108–09 (7th Cir.1987). In the same token, the plaintiff's conclusory claim of conspiracy is insufficient to defeat summary judgment.

## VII. PERSONAL INVOLVEMENT/OFFICIAL CAPACITY

 Regardless of the merit of the plaintiff's claims, the supervisory defendants cannot be held liable for the alleged constitutional violations. The plaintiff's letters to Peters, Dobucki, Baker and Sassatelli are insufficient to create liability. *Hanna v. Lane,* 610 F.Supp. 32, 36 (N.D.Ill.1985). The plaintiff has alleged no facts establishing those individuals' direct, personal involvement, as required by *Duckworth v. Franzen,* 780 F.2d 645, 650 (7th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). Nor has the plaintiff shown that the alleged violation of his constitutional rights occurred at the direction or knowledge and consent of the administrative defendants. *See Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir.1985).

The mere fact that those individuals hold supervisory positions within the Graham Correctional Center and the D.O.C. is insufficient to establish liability, as the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Pacelli v. DeVito,* 972 F.2d 871, 877 (7th Cir.1992). Additionally, the Eleventh Amendment bars the plaintiff from suing state officials acting in their official capacities for damages under 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

## VIII. ADMONITION REGARDING RULE 11'S PROVISIONS FOR SANCTIONS

For the foregoing reasons, the defendants' motion for summary judgment shall be granted. As a final concern, the plaintiff is warned that the court will not continue to tolerate such patently groundless litigation. The plaintiff, a seasoned litigator in the federal courts, has the wherewithal and the resources to research any contemplated lawsuits. Although this court is generally reluctant to impose sanctions against *pro se,* indigent litigants, the judiciary has consistently deemed it proper to penalize prisoners who file frivolous or malicious pleadings. *See, e.g., Gabel v. Lynaugh,* 835 F.2d 124, 125 (5th Cir.1988); *Lay v. Anderson,* 837 F.2d 231, 232 (5th Cir.1988); *Sales v. Marshall,* 873 F.2d 115, 120 (6th Cir.1989).

Federal litigation is not intended to be used as a "fishing expedition," nor as recreation by bored inmates. The plaintiff has been a frequent litigator in the federal courts, pursuing lawsuits without even arguable legal footing. Frivolous *pro se* cases command substantial judicial time and resources, diverting considerable attention from other matters on the court's dockets. Prisoner litigation also weighs heavily on the State, which must both defend against the charges and assist in the prosecution of such claims. Furthermore, there is a serious threat that legitimate *pro se* petitions will drown in the cacophony of the groundless lawsuits. In the future, the court will not hesitate to assess sanctions to curb further abuse of the judicial process by plaintiff Hadley.

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment (docket # 35) is allowed. The Clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed.R.Civ.P. 56. The case is terminated. The parties are to bear their own costs.