Kenneth E. GENTRY, Plaintiff–
Appellant,

v.

Jack R. DUCKWORTH, Superintendent,
Indiana State Reformatory,
Defendant–Appellee.

No. 93–1407.

United States Court of Appeals,
Seventh Circuit.

Argued May 12, 1995.

Decided Aug. 29, 1995.

Rehearing Denied Sept. 20, 1995.

See also 586 N.E.2d 860.

Jerold S. Solovy, Lawrence S. Schaner, Steven P. Blonder (argued), Jenner & Block, Chicago, IL, for plaintiff-appellant.

Laurel Taback Twinney, Wayne Uhl (argued), Office of the Attorney General, Indianapolis, IN, for defendant-appellee.

**1.** Gentry also originally named James Aiken, former Commissioner of the Indiana Department of

KANNE, Circuit Judge.

Kenneth Gentry, an inmate at the Indiana State Reformatory, claims he was denied materials necessary to complete an adequate court filing. Gentry argues that the denial violated his constitutional right of access to the courts. The district court granted summary judgment against Gentry; we vacate and remand.

## I. Background

Kenneth Gentry is a prisoner of the State of Indiana, convicted of burglary, theft, and of being a habitual offender. Those convictions were affirmed on direct appeal. On May 22, 1990, Gentry filed a petition for state post-conviction relief. The trial court denied the petition; Gentry appealed to the Indiana Court of Appeals. The brief that Gentry filed in support of his appeal did not meet procedural requirements. It was handwritten (rather than typed), it was not properly bound along the left margin, its cover was white paper (rather than blue), and it did not contain a verbatim statement of the judgment. For those four reasons, on January 21, 1992, the Indiana Court of Appeals dismissed Gentry's petition for substantial nonconformance with procedural rules, without ever reaching the merits. *Gentry v. State,* 586 N.E.2d 860 (Ind.App.1992). The Indiana Supreme Court denied transfer.

On May 4, 1992, Gentry filed a petition for a writ of habeas corpus in United States district court. On August 25, 1992, the district court denied Gentry's habeas petition. Meanwhile, on May 14, 1992, Gentry filed a complaint in United States district court under 42 U.S.C. § 1983, alleging that prison officials had violated his right of access to the courts by denying him materials necessary to allow him to conform his (earlier, dismissed) brief to procedural rules. Jack Duckworth was superintendent of the Indiana State Reformatory when Gentry was denied scribe materials. Instead of naming the prison employees who actually refused him materials, Gentry proceeded solely against Duckworth.[1]

Correction. The district court denied Gentry

The district court granted summary judgment for Duckworth; Gentry appeals.

## II. Analysis

■ We review a district court's grant of summary judgment *de novo*. *Hedberg v. Indiana Bell,* 47 F.3d 928, 931 (7th Cir.1995). We view all the facts in the light most favorable to the nonmoving party, and we draw all reasonable inferences in favor of the nonmoving party. *Id.* A district court must grant summary judgment where the record before it shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ Prisoners have a constitutional right to "meaningful" access to the courts. *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977); *Shango v. Jurich,* 965 F.2d 289, 291 (7th Cir.1992); *Gometz v. Henman,* 807 F.2d 113, 116 (7th Cir.1986). Prisoners must receive "that quantum of access to prison libraries—not total or unlimited access—which will enable them to research the law and determine what facts may be necessary to state a cause of action." *Hossman v. Spradlin,* 812 F.2d 1019, 1021 (7th Cir.1987); *see also Campbell v. Miller,* 787 F.2d 217, 226 (7th Cir.1986). While access to law libraries is the most frequently discussed element of access to the courts, part of meaningful access is furnishing basic scribe materials for the preparation of legal papers. *Bounds,* 430 U.S. at 824, 97 S.Ct. at 1496; *Gluth v. Kangas,* 951 F.2d 1504, 1510 (9th Cir.1991). Being able to formulate abstract legal theories is insufficient to give access to the courts without the physical means of filing a complaint based on those theories. Necessary scribe materials include paper, some means of writing, staplers, access to notary services where required by procedural rules, and mailing materials.[2] Of course, prisoners are not entitled to limitless supplies of such materials, merely

leave to proceed *in forma pauperis* against Aiken; Gentry has not appealed that decision.

to that amount minimally necessary to give them meaningful access to the courts.

■ We use a two-part test to decide if prison administrators violated the right of access to the courts. *Smith v. Shawnee Library Sys.,* 60 F.3d 317 (7th Cir.1995); *Jenkins v. Lane,* 977 F.2d 266, 268 (7th Cir. 1992). First, the prisoner must show that prison officials failed " 'to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.' " *Id.,* quoting *Bounds,* 430 U.S. at 828, 97 S.Ct. at 1498. Providing adequate scribe materials is included within the actions required of prison officials. Second, he must show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Jenkins,* 977 F.2d at 268.

■ The district court found that Gentry had satisfied the first part of the test. A genuine issue of fact existed as to whether prison officials had denied Gentry the blue paper, typewriter, and binding materials necessary to conform his brief to Indiana's procedural rules. Nonetheless, the district court granted summary judgment for Duckworth, finding that Gentry could not prove that he suffered any detriment and thus could never meet the second part of the test.

To understand the district court's rationale, we must examine Gentry's various appeal and post-conviction proceedings. On direct appeal, Gentry alleged three areas of error; the Indiana court hearing his direct appeal affirmed his convictions. Gentry then filed a petition for post-conviction relief in the trial court, but he based his petition on grounds of alleged error different from those on which he had based his direct appeal. Therefore, the Indiana trial court concluded that Gentry had forfeited his new arguments by his failure to include them in his direct appeal. Gentry appealed the trial court's denial of his petition; it was that appeal that

**2.** Such materials are only necessary when the prisoner must do his own work; if others are assisting him by writing his documents, he has no independent right to scribe materials.

the Indiana Court of Appeals dismissed as defective.

When granting summary judgment on Gentry's § 1983 claim, the district court reasoned:

> There is no basis in the record ... to conclude that Gentry would have prevailed in his appeal from the postconviction action even if it had been typed, presented with a blue cover and defect-free in every other procedural aspect. The task which he would not have surmounted is to have persuaded the Indiana Court of Appeals to disregard Indiana law concerning procedural waiver and return the case to the trial court for consideration of the merits of the post-conviction claims. Unless that was accomplished, there was no conceivable possibility of Gentry prevailing in the postconviction action. Hence, despite the ill-fated appeal, Gentry has not suffered detriment in any meaningful sense.

█ The district court correctly concluded that "detriment" means some sort of real prejudice. This is apparent from our most frequent formulation of the test: that the prisoner must show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir.1994); *Shango*, 965 F.2d at 292; *Howland v. Kilquist*, 833 F.2d 639, 642–43 (7th Cir.1987); *Hossman*, 812 F.2d at 1021 n. 2. That phrasing means that a detriment must exist, a detriment resulting from illegal conduct that affects litigation. It does not mean that any delay is a detriment. *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied,* — U.S. —, 113 S.Ct. 1002, 122 L.Ed.2d 152 (1993). Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation. *Id.* If a mere allegation of some delay, even to contemplated litigation, were adequate, the second part of the test would have no real import.

█ Contrary to the district court's conclusion, however, Gentry has alleged, for summary judgment purposes, that he was prejudiced by prison officials' refusal to give him scribe materials, and thus he suffered "detriment." First, the Indiana Court of Appeals would not necessarily have refused to hear the merits of Gentry's petition for post-conviction relief. In Indiana, procedural waiver is not absolute. Even when an appellant has waived claims of error by not including them in his direct appeal, they may still be raised in a post-conviction proceeding where certain forms of "fundamental error" are claimed. *Bailey v. State*, 472 N.E.2d 1260, 1263 (Ind.1985); *Smith v. State*, 559 N.E.2d 338, 343–44 (Ind.App.1990). A "fundamental error" is a blatant error that violates due process—for example, violation of the right to effective assistance of counsel. *Bailey*, 472 N.E.2d at 1263. The district court erred in concluding that Gentry could never have succeeded in the Indiana Court of Appeals, for procedural waiver in Indiana lacks the ultimate finality the district court ascribed to it.

█ That is reason enough to set aside the district court's grant of summary judgment. More integrally, however, it is necessary that we make clear what constitutes prejudice in this context. Prejudice to the right of access to the courts occurs whenever the actions of a prison official causes court doors to be actually shut on a complaint, regardless of whether the suit would ultimately have succeeded.

As Judge Bauer explained at oral argument, the right of access to the courts means the right to rise to the level of being a failure. The right of access is at its base a right to be heard. Therefore, a total loss of the opportunity to raise one's voice in the courts is itself the requisite detriment. That conclusion is implicit in our earlier discussions of the detriment requirement. *See Martin v. Davies*, 917 F.2d 336, 340 (7th Cir.1990) (giving as examples of prejudice "court dates missed" and "inability to make timely filings"), *cert. denied,* 501 U.S. 1208, 111 S.Ct. 2805, 115 L.Ed.2d 978 (1991); *De-Mallory v. Cullen*, 855 F.2d 442, 449 (7th Cir.1988) ("Where limitations on library use prevent filing of briefs in time for the court's consideration, those limitations are sufficiently prejudicial to sustain an access-to-courts claim."); *see also Strickler v. Waters*, 989

F.2d 1375, 1383–85 (4th Cir.) (discussing detriment requirement), *cert. denied,* —— U.S. ——, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993).

Sound policy underlies this conclusion. First, allowing access to courts claims to be dismissed when a prisoner arguably had stood no chance of success on the merits of his underlying claim would lead to a "trial within a trial." Parties would be obliged to submit and defend what amounted to Rule 12(b)(6), summary judgment, or other dispositive motions, but for hypothetical cases at hypothetical stages. That would hardly be efficient. Second, courts would have to speculate about what another court would have done if, contrary to fact, a prisoner had had adequate access to the courts. Third, in many instances, weighing the chances of theoretical success on the merits would require a federal court hearing an access to courts claim to decide whether an unrelated issue could have hypothetically succeeded in state court. Federal courts are not the preferred fora for such determinations. *See generally Hoover v. Wagner,* 47 F.3d 845, 850–51 (7th Cir.1995).

Occasionally judges dealing with access to courts claims will face a situation where the blocked claim was simply gibberish, completely lacking any sort of rationality. Such a complaint could not have succeeded, but that determination would be very simple and undoubted. It would not require a "trial within a trial" or applications of state law to hypothetical fact patterns. In such cases a finding of no prejudice might be appropriate. Gentry's blocked petition for post-conviction relief, however, was perfectly rational.

■ That is not to say that a prisoner's chances of success on his blocked claim are never relevant to litigation. In fact, the chances of success are very relevant to the question of damages: lower damages are appropriate for lower loss. But that relevancy comes into play later than summary judgment and is not a reason to dismiss the access to courts claim out of hand.

■ So the district court erred in granting summary judgment on the ground that Gentry suffered no prejudice.[3] But that is not the end of the story. Appellees argue that collateral estoppel (also known as issue preclusion) arising from the federal habeas proceeding bars Gentry from litigating whether he was denied access to the courts. However, we are not persuaded that issue preclusion applies here.

■ To show issue preclusion, appellees must prove four elements: 1) The issue sought to be precluded must be the same as that involved in the prior litigation; 2) the determination of the issue must have been actually litigated; 3) the determination of the issue must have been essential to the final judgment; and 4) the party against whom issue preclusion is invoked must have been fully represented in the prior action. *Meyer v. Rigdon,* 36 F.3d 1375, 1379 (7th Cir.1994).

■ Duckworth argues that the denial of Gentry's federal habeas petition decided Gentry's claim that he was denied access to the courts. We do not have the record of the habeas proceeding, but we do have Judge McKinney's detailed order denying Gentry's petition. Judge McKinney noted that Gentry's failure to present his claims fully to the state courts, because of the dismissal of his claims as defectively presented, operated as a procedural bar preventing the grant of federal habeas corpus. The judge then noted that "state procedural rules [are] inadequate to preclude federal review of constitutional claims where the procedural requirement was novel or sporadically applied." He concluded that the Indiana requirement that briefs be in a certain format was neither novel nor sporadically applied, and that therefore the dismissal by the Indiana Court of Appeals acted as a procedural bar to the further consideration of federal habeas corpus. Although Judge McKinney tangentially mentioned that it did not appear that Gentry had been denied the materials as he claimed, that mention was used merely to buttress Judge McKinney's conclusion that the Indiana appellate court's requirements were

---

**3.** Gentry also claimed that while he was in segregation his access to library services was inadequate. However, he neither alleges nor shows

prejudice to any specific litigation, and therefore that broader claim fails before it begins. *Jenkins,* 977 F.2d at 269–70.

not novel or arbitrary. Therefore, the issue involved in the federal habeas case is distinct from the issue involved here, because access to the courts is distinct from arbitrariness of application of procedural rules. Moreover, from Judge McKinney's order it does not appear that the parties actually litigated whether Gentry had been denied access. Duckworth thus fails to meet two elements necessary to show issue preclusion, so his argument collapses.

 Duckworth's last argument is that he cannot be personally liable for the deprivations Gentry alleges, because other prison employees were the ones who allegedly refused to issue scribe materials to Gentry. To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right. *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir.1994). Of course, Duckworth cannot be personally liable under a theory of *respondeat superior. Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988). However, " '[a]n official satisfies the personal responsibility requirement of section 1983 ... if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent.' " *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir.1985) (quoting *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir.1982)). That is, he "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye...." *Jones*, 856 F.2d at 992. In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery. *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983).

 Gentry apparently claims that Duckworth ordered that prisoners such as Gentry were to be denied scribe materials, even though he did not order that Gentry specifically be denied materials. That is not the only possible reading of the materials Gentry submitted to the district court. However, we will read Gentry's complaint and summary judgment responses more generously, be-

cause he was a *pro se* litigant at the time of those proceedings.[4] *United States v. Blanton*, 884 F.2d 973, 976 n. 1 (7th Cir.1989). The dissent correctly notes that those who file *pro se* prisoner complaints should not be given free rein. In fact, we apply the same basic rules to their filings as we do to the materials submitted by other types of litigants. *See Talley v. Lane*, 13 F.3d 1031, 1033 (7th Cir.1994).

Nonetheless, although Gentry's filings are sometimes opaque and often confusing, it is a reasonable construction of Gentry's pled facts that Duckworth knew of the denial of scribe materials, even if only by the many letters Gentry sent him. Furthermore, we can glean from Gentry's filings his argument that continued denial of scribe materials was a policy of Duckworth's, at least to the level of "turn[ing] a blind eye," *Jones*, 856 F.2d at 992, and perhaps to the level of an actual policy of denial. The question is close, but we think Gentry should be allowed to proceed with his suit against Duckworth.

 One final point. At the same time that the district court granted summary judgment for Duckworth, it denied Gentry leave to amend to add additional defendants. It reasoned that Gentry could never succeed on his § 1983 suit, so adding defendants would be "an exercise in futility." It is no longer an exercise in futility, because we have decided Gentry's suit may proceed. However, on appeal only in his reply brief did Gentry raise the argument that the district court erred in denying leave to amend, even though he had appointed counsel by that time. It is axiomatic that arguments omitted from an opening brief are forfeited. *Wilson v. O'Leary*, 895 F.2d 378, 384 (7th Cir.1990). Therefore, we will not disturb the district court's denial of Gentry's request for leave to amend.

We VACATE the district court's grant of summary judgment and REMAND for further proceedings.

---

**4.** Gentry did not proceed *pro se* on appeal; the court appointed attorneys from the law firm of Jenner & Block to represent him.

MANION, Circuit Judge, dissenting.

My colleagues have found that it was inappropriate on these facts to have granted summary judgment against Kenneth Gentry on his access to courts claim. And it may be true that Gentry's rights were violated if he can show that he was denied certain scribe materials that were necessary to allow him to conform to the procedural rules of the Indiana Court of Appeals. But he cannot win below and should not win here for one very simple reason. He sued the wrong defendant.

Jack Duckworth, Superintendent of the Indiana State Reformatory, is the only defendant here. Gentry requested leave of the district court to add additional defendants, but that motion was denied. And as the court notes, that issue was forfeited when not timely appealed. He must therefore show that a reasonable juror could have found from the facts in the record that Duckworth himself was guilty of the conduct alleged in this case. *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir.1988); *Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir.1985). There is no such evidence here. The summary judgment record indicates only that Gentry wrote letters to Duckworth which were not answered. There is therefore no indication that Duckworth even knew about the alleged deprivation of materials, let alone directed others to deny the materials or otherwise facilitated the denial. *See Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984) (mere fact that supervisors were informed of harassment did not establish involvement); *Hadley v. Peters,* 841 F.Supp. 850, 860 (C.D.Ill.1994) (letters sent to supervisory defendants insufficient to create liability).

My colleagues effectively excuse Gentry from his duty to present such facts. As the court points out, we will sometimes construe *pro se* pleadings broadly in favor of litigants without counsel. But we must not completely excuse such litigants from their obligation to present facts in support of their claims. *See Timms v. Frank,* 953 F.2d 281, 283 (7th Cir.1992). The only concession we grant to *pro se* litigants in a summary judgment situation is the requirement that such parties receive adequate notice of their duty to respond to the motion with facts demonstrating a genuine issue for trial. *Id.* at 285 (all *pro se* litigants entitled to notice of the consequences of failing to respond to a summary judgment motion). Such notice was given here.

The conclusion to this case is therefore simple. Gentry failed to present facts from which a jury could conclude that Duckworth was personally responsible for the deprivations in this case. On that basis the district court's grant of summary judgment against him should be affirmed.