In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3748

DAVID L. BACKES, et al.,

*Plaintiffs-Appellants*,

*v.*

VILLAGE OF PEORIA HEIGHTS,
ILLINOIS, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 1:07-cv-01283-JAG—**John A. Gorman,** *Magistrate Judge.*

ARGUED SEPTEMBER 22, 2011—DECIDED NOVEMBER 10, 2011

Before BAUER, MANION and KANNE, *Circuit Judges*.

BAUER, *Circuit Judge.* The plaintiffs-appellants, David and Sara Backes, sued the Village of Peoria Heights and its Chief of Police plus several other law enforcement officials for civil rights violations under 42 U.S.C. § 1983. They also included state common law claims in their complaint. The defendants filed motions for summary judgment, which the district court granted, dismissing the suit. A timely appeal was filed. Reviewing the deci-

sion *de novo*, we find no error on the part of the district court and affirm.

## I.  BACKGROUND

David Backes ("Backes") works as a correctional officer in the Illinois Department of Corrections in Galesburg, Illinois. A veteran of the Persian Gulf War, Backes suffered from post-traumatic stress disorder for years. At the time of the events underlying this appeal, he was taking an anti-depressant drug, a powerful sleeping aid, and several other medications. He also owned two shotguns, which he kept in his home.

On the evening of October 17, 2006, Backes left his home in East Peoria, Illinois, after an argument with his wife, Sara. He drove around the area, frequently calling Sara and at least once suggesting to her that he might commit suicide. At some point, Sara called the police. The police dispatcher put out a report over several wires stating that Backes was suicidal, was on medication, and had access to weapons. Eventually, Backes ended up at the Poplar Street Park in the Village of Peoria Heights, where he parked his car, took one of the sleeping pills, and fell asleep. Although by this time Backes had decided against suicide, he never communicated this decision to anyone prior to falling asleep in the car.

Officer William Switzer, a sergeant in the Peoria Heights Police Department, was the first officer to respond and arrived at the park around 2:00 a.m. on October 18. Under the impression from the dispatch that Backes was poten-

tially armed and suicidal, Switzer parked a safe distance from Backes's car, shined a spotlight into the driver's side window, and notified dispatch of his arrival. Two more officers then arrived: Officer Kevin Hale of the Peoria Heights Police Department and Officer Paul Segroves of the City of Peoria Police Department. The officers saw that the driver's side window was down and that Backes was sitting nearly motionless in the seat; Switzer's report indicated some small movements at various times over the course of about two hours of surveillance. The officers tried to alert Backes to their presence and to elicit some response. Although the police sought confirmation through Sara about whether Backes actually had firearms in his possession, the fact that his two shotguns remained in his home never reached Switzer in the park.

After two hours with no response from Backes, Switzer called Dustin Sutton, Chief of Police of the Village of Peoria Heights. Switzer gave Chief Sutton his opinion of the situation: namely, that Backes posed a potential threat not only to himself but also to those around him. Chief Sutton decided to contact the Central Illinois Emergency Response Team ("CIERT"), a specialized team made up of members of several different law enforcement agencies and led by a member of the Peoria County Sheriff's Office.

Lieutenants Hartwig and Pierson, two officers of CIERT, arrived at Poplar Street Park, and Chief Sutton arrived around the same time. They were brought up to speed by the officers on the scene.

Pierson, the commanding CIERT officer, made the decision to call in a full CIERT squad for support. He and Hartwig then formulated a plan, and CIERT executed it. A CIERT armored vehicle was moved into position, spike strips were put behind the parked car, and Lieutenant Gaa of CIERT shot "pepper balls" into the car while Switzer, who happened to be a member of CIERT, stood by and provided cover. The CIERT personnel then removed Backes from the car; immediately afterward, an ambulance waiting nearby carried Backes to the hospital.

As a result of the CIERT operation, Backes claims that his depression and post-traumatic stress disorder worsened. He and his wife filed suit under 42 U.S.C. § 1983 claiming excessive force on the part of the police; they also brought state law claims for battery, false arrest, and willful and wanton misconduct by the officers.

## II. DISCUSSION

The district court granted summary judgment in favor of Chief Sutton, the Village of Peoria Heights, and Officer Switzer,[1] finding no genuine issue of material fact that might entitle Backes to relief. We review the grant of summary judgment *de novo*. *Parkey v. Sample*, 623

---

[1] The appellants do not argue that summary judgment in favor of Officer Switzer was in error. Their arguments deal solely with the liability of Chief Sutton and the Village of Peoria Heights. Therefore, we review the district court's grant of summary judgment as to those two defendants only.

F.3d 1163, 1165 (7th Cir. 2010). We construe all facts in the non-moving party's favor. The appellants now argue that the district court erred in dismissing the § 1983 claim against Chief Sutton and in dismissing the state law claim for battery both against Chief Sutton and the Village of Peoria Heights. We consider each argument in turn.

## A. The § 1983 Claim for Excessive Force and Supervisory Liability

Section 1983 suits brought against police for use of excessive force are typically analyzed under the Fourth Amendment. In this case, we need not reach a Fourth Amendment analysis. The district court granted judgment in the appellees' favor based on the well-established principle of law that a defendant must have been "personally responsible" for the deprivation of the right at the root of a § 1983 claim for that claim to succeed. *See Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). If Chief Sutton was not personally responsible for the conduct at issue in this case, the § 1983 claim against him must fail.

The law recognizes, however, that a defendant need not "participate[] directly in the deprivation" for liability to follow under § 1983. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Indeed, a supervisor may still be personally liable for the acts of his subordinates if he "approves of the conduct and the basis for it." *Chavez*, 251 F.3d at 651 (citations omitted). "[S]upervisors must

know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988)).

Here, the conduct at the root of the claim was carried out by members of the inter-departmental emergency response team, CIERT. The most senior CIERT officer on the scene was Lieutenant Pierson, who was also a deputy in the Peoria County Sheriff's Office. The other CIERT supervisor on the scene, Lieutenant Hartwig, was also a member of the county police. Hartwig and Pierson were the officers who formulated the plan to remove Backes from his car. When they implemented that plan, there is no evidence that Chief Sutton played any part in it whatsoever. In short, Chief Sutton was not personally involved in the operation in a way that would lead to liability under § 1983.

The appellants argue, however, that Chief Sutton should be liable as a supervisor for the conduct of CIERT because he "facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye." *Chavez*, 251 F.3d at 651. But there is no evidence in the record that Chief Sutton supervised CIERT in any way. In fact, Chief Sutton was not even a member of CIERT. As the Chief of Police for the Village of Peoria Heights, he belonged to a completely different governmental entity than Lieutenant Pierson, the commander on the scene for CIERT and a county deputy sheriff.

At best, the appellants can point to evidence that Chief Sutton was consulted when CIERT members formulated their plan, that he gave the CIERT team a recommendation on how to proceed, and that he ultimately agreed with the chosen course of action. But even these facts do nothing to connect Chief Sutton to CIERT in any supervisory capacity. If he condoned the plan, it was not as a supervisor but as a mere consultant from a completely separate governmental department. Once CIERT made the decision on how to respond, it executed its plan without any input or involvement from Chief Sutton.

The appellants rely heavily on *Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir. 1979) *rev'd in part*, 446 U.S. 754 (1980). That case simply reaffirmed the holding of *Schnell v. City of Chicago* that supervisory personnel may be liable under § 1983 when they "have notice of the unconstitutional conduct of their subordinates and fail to prevent a recurrence of such misconduct." *Schnell v. City of Chicago*, 407 F.2d 1084, 1086 (7th Cir. 1969); *see also Hampton*, 600 F.2d at 626-27. In *Hampton*, members of the state's attorney's office played an integral role in planning a police raid that resulted in a civil rights claim. *Hampton*, 600 F.2d at 605-07. The attorneys supervised the raid in detail by drafting the warrant, selecting the members of the team, selecting the weapons that would be used, and deciding on the time of the raid, among other things. *Id.* at 612.

*Hampton* is distinguishable based on the clear supervisory role of the state's attorney's office in that case. The attorneys had the authority to plan and execute the raid

themselves, and they exercised that authority, even some who were not personally present at the raid. Here, Chief Sutton could have chosen to handle the situation with his own team of Village of Peoria Heights police officers, but instead he deferred to a specialized emergency response team by calling in CIERT. And again, the appellants point to no evidence that would indicate a supervisory position of Chief Sutton over CIERT, or of the Village of Peoria Heights Police Department over the Peoria County Sheriff's Office.

The appellants also rely on an Illinois statute for the proposition that Chief Sutton is open to supervisory liability based on the CIERT team's actions. The portion of the statute that they cite reads as follows: "[T]he mayor of any municipality in the district, and the chiefs of police therein, shall use the police forces under their control anywhere in the district." 65 ILCS 5/7-4-8. This statute merely outlines the basic jurisdiction of city police and does not describe the authority of special task forces or address potential conflicts of jurisdiction between different police departments. In short, no plain reading of this statute would allow us to find that Chief Sutton, as a matter of state statutory law, can exercise supervisory authority over any other law enforcement agency that happens to be within the Village of Peoria Heights. The appellants' reliance on this statute is misplaced.

**B.  State Law Claims**

The appellants also argue that the district court erred in granting the appellees' motion for summary judgment

on the state law claim for battery against Chief Sutton and the Village of Peoria Heights. Battery is defined under Illinois law as follows: "A person commits battery if he or she knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3. We agree with the district court that any harm suffered by Backes cannot be attributable to Chief Sutton because, as we have already noted, Chief Sutton did not take part in the CIERT operation. And because Chief Sutton is not liable for battery under Illinois law, the Village of Peoria Heights is also free from liability for battery. The state's Tort Immunity Act mandates that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. The district court properly granted the motion for summary judgment in the appellees' favor on this issue.

## III. CONCLUSION

We AFFIRM summary judgment in favor of the defendants-appellees on both the § 1983 claim for excessive force and the state law claim for battery.