NO. 4-10-0206    Opinion Filed 3/30/11

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: the Detention of KEVIN W. STANBRIDGE, a Sexually Violent Person, THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. KEVIN W. STANBRIDGE, Respondent-Appellant. | ) ) ) ) ) ) ) ) ) | Appeal from Circuit Court of Adams County No. 05MR45 Honorable William O. Mays, Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Presiding Justice Knecht and Justice McCullough concurred in the judgment and opinion.

**OPINION**

In April 2009, respondent, Kevin W. Stanbridge, filed an amended petition for discharge from the custody and control of the Illinois Department of Human Services (IDHS) pursuant to section 70 of the Sexually Violent Persons Commitment Act (725 ILCS 207/70 (West 2008)).  In October 2009, the State filed a motion for finding of no probable cause based upon review of reevaluation report under section 55 of the Act (725 ILCS 207/55 (West 2008)).  Following a January 2010 hearing on the parties' respective filings, the trial court (1) denied respondent's amended petition and (2) granted the State's motion, finding that no probable cause was shown to warrant an evidentiary hearing to determine whether respondent remained a sexually violent person.

Respondent appeals, arguing that the trial court abused its discretion by denying his amended petition for discharge from

IDHS custody and control.  We reverse and remand.

## I. BACKGROUND

### A. The Circumstances Surrounding Respondent's Detention

In November 1999, the State charged respondent (then 35 years old) with aggravated criminal sexual abuse (720 ILCS 5/12-16(d) (West 1998)), alleging that he committed an act of sexual penetration with a 14 year old by placing his mouth on the boy's penis.  Following a jury trial, respondent was convicted, and the trial court sentenced him to seven years in prison.  In May 2004, this court reversed respondent's conviction and remanded the case for a new trial.  *People v. Stanbridge*, 348 Ill. App. 3d 351, 810 N.E.2d 88 (2004).

Following an April 2005 retrial, a jury convicted respondent of aggravated criminal sexual abuse (720 ILCS 5/12-16(d) (West 1998)).  Respondent appealed, and this court affirmed that conviction.  *People v. Stanbridge*, No. 4-05-0585 (June 14, 2007) (unpublished order under Supreme Court Rule 23).

In May 2005--while respondent's appeal in case No. 4-05-0585 was pending--the State petitioned the trial court to detain respondent pursuant to the Act.  The State alleged that (1) respondent suffered from the following mental disorders: (a) pedophilia, sexually attracted to males, nonexclusive type, (b) paraphilia, not otherwise specified, sexually attracted to adolescent males, and (c) antisocial personality disorder; and (2) because of respondent's disorders, he was predisposed to commit future acts of sexual violence.  The court later found

probable cause to believe that respondent was a sexually violent person and ordered him detained in an IDHS facility pending trial.

Following an October 2007 trial on the State's petition, a jury adjudicated respondent a sexually violent person as defined in section 5(f) of the Act (725 ILCS 207/5(f) (West 2004)). In February 2008, the trial court ordered respondent committed to a secure facility for institutional care until "such time as [r]espondent is no longer a sexually violent person."

### B. The Parties' Respective Filings

In April 2009, respondent filed an amended petition for discharge from IDHS custody and control pursuant to section 70 of the Act (725 ILCS 207/70 (West 2008)). At a hearing conducted later that same month, the trial court ordered a psychological evaluation of respondent, which was later conducted by Dr. Kirk Witherspoon, a clinical and forensic psychologist.

In October 2009, the State filed a motion for finding of no probable cause based upon review of reevaluation report under section 55 of the Act (725 ILCS 207/55 (West 2008)). Attached to that motion was a 30-page report describing the 18-month psychological reevaluation of respondent conducted by Dr. Edward Smith, a clinical psychologist.

In January 2010, Witherspoon filed a 32-page amended psychological evaluation detailing his findings.

### C. The Evidence Presented at Respondent's Probable-Cause Hearing

At a January 2010 probable-cause hearing, the trial

court considered (1) respondent's amended petition for discharge from IDHS custody and control and (2) the State's motion for finding of no probable cause based upon review of reevaluation report.  The evidence presented at that hearing originated from two written psychological evaluations of respondent conducted by Witherspoon and Smith.

We note that in the following general summaries of the parties' expert evaluations, we deliberately omit the specific details of the respective psychological testing methodologies used because such specificity is not necessary to the resolution of the issue before us--that is, whether Witherspoon's unchallenged psychological evaluation was sufficient to establish probable cause that respondent was no longer a sexually violent person.

1. *Witherspoon's Amended Psychological Evaluation*

After reviewing the relevant records regarding respondent's conviction and detention, Witherspoon administered to respondent two separate "psychological inventories" designed to measure deviant sexual attitudes and behavior.  Witherspoon noted that respondent's inventory test results did not show (1) present or historic antisocial tendencies or (2) any form of deviant sexual psychopathology.

Witherspoon also administered three actuarial assessment instruments designed to predict sexual-offense-recidivism rates.  Witherspoon explained that respondent's test score on one assessment placed him in (1) the low to moderate recidivism risk

category and (2) a category of offenders who averaged a 7% recidivism risk rate over a 5-year period.  Witherspoon opined that respondent's test score meant that on average, 93% of his age group would not commit further sexual offenses.  Witherspoon anticipated that because respondent did not exhibit difficulties in any of the measured domains, he would be a "low" recidivism risk, which translated into a 95% nonrecidivism rate for his age group.

Respondent's test score on the remaining assessments showed that (1) respondent's antisocial tendencies were on par with "average nonincarcerated males" and (2) none of respondent's profile scores reached the "cause for concern" level, which suggested a low recidivism risk.

Witherspoon stated that his clinical impressions, which were based on respondent's two previous reevaluations and the data gathered during Witherspoon's current assessment, were that respondent did not demonstrate significant emotional, interpersonal, behavioral, or cognitive problems.  Witherspoon identified one exception regarding respondent's history of alcohol abuse, which Witherspoon opined was in "long-term remission." Witherspoon summarized his findings as follows:

> "[B]alanced consideration of the adjusted actuarial and structured professional judgment risk assessments procedures employed in the present evaluation suggested placing [respondent] within a 'low' relative sexual

reoffense risk category in comparison to

other convicted sexual offenders."

Based on his evaluation, Witherspoon recommended, in pertinent part, that respondent be discharged from IDHS care and oversight.

2. *Smith's Psychological Reexamination*

After reviewing respondent's IDHS records, a peer consultation, and his previous six-month psychological examination of respondent, Smith concluded that respondent met the criteria for the following disorders: (1) paraphilia, not otherwise specified, sexually attracted to adolescent males; (2) alcohol abuse, in a controlled environment; and (3) personality disorder, not otherwise specified, with antisocial traits. Smith explained that paraphilia is associated with (1) recurrent, intense sexually arousing fantasies, urges, or behaviors generally involving nonhuman objects or (2) the suffering or humiliation of oneself, children, or other nonconsenting adults. Smith also concluded that he could not rule out pedophilia, sexually attracted to males, nonexclusive type.

Smith assessed respondent's sexual-offense-recidivism rate further by administering two actuarial assessment instruments that were different from those administered by Witherspoon. Respondent's test score on one assessment placed him in the moderate to high category of recidivism risk. Smith noted that 12% to 14.2% of sexual offenders with similar scores were charged or convicted of another sexual offense within a 5-year period, with that percentage increasing to 16.5% to 20.6% over a 10-year

period.  Smith noted further that respondent's score on the second assessment placed him in the high-risk recidivism category, but acknowledged that the specific test he administered is more effective in predicting sexual-offense-recidivism rates for rapists and extrafamilial child molesters than for intrafamilial child molesters.

Smith also identified the following five additional risk factors, which were not measured by actuarial instruments but instead based on two meta-analyses: (1) any personality disorder, (2) any substance abuse, (3) intoxication during sexual offense, (4) intimate relationship conflicts, and (5) any deviant sexual interests.

Based on his evaluation, Smith concluded that (1) respondent's risk assessments coupled with the additional risk factors suggested that a substantial probability existed that respondent would engage in further acts of sexual violence and (2) respondent has not made sufficient progress in lowering his sexual-offense-recidivism risk to conclude that he is safe to be managed in the community on conditional release.

### D. The Trial Court's Judgment

After noting that it had considered the respective expert reports and the parties' arguments, the trial court made the following findings:

> "[T]he court found [respondent] to be a sexu-
> ally violent person[--]had the appropriate
> diagnosis and findings [in February 2008].

[The court does not] see where the [State's] expert, *** Smith, has found that there is anything different than that, based on what has occurred between now and the time of the original finding.

Witherspoon, if [the court] remembers correctly, came up with many of the same conclusions at the time of the original hearing, and that's in fact what was determined by the jury. So it seems to [this court that] at this point[,] there is no probable cause to proceed with a full hearing on the matter, and the court would so rule."

In February 2010, the trial court entered a written order (1) denying respondent's amended petition and (2) granting the State's motion. Specifically, the court found that based on a "review of the reports, *concerning the 18-month re[]evaluation* of respondent," no probable cause existed to warrant an evidentiary hearing to determine whether respondent remained a sexually violent person. (Emphasis in original.)

This appeal followed.

## II. THE TRIAL COURT'S FINDING THAT NO PROBABLE CAUSE EXISTED TO WARRANT AN EVIDENTIARY HEARING

Respondent argues that the trial court abused its discretion by denying his amended petition for discharge from IDHS custody and control. Specifically, respondent contends that the court weighed the conflicting testimony of the parties'

- 8 -

respective experts instead of determining only whether the evidence presented established probable cause to warrant an evidentiary hearing.  We agree.

A. The Appropriate Standard of Review

The parties disagree over the proper standard of review.  Respondent, citing *In re Ottinger*, 333 Ill. App. 3d 114, 120, 775 N.E.2d 203, 208 (2002), argues that whether probable cause exists to warrant an evidentiary hearing under the Act is a matter resting within the sound discretion of the trial court. However, in the context of the case before us--namely, a case in which the trial court considered only the written reports of the parties' respective experts, instead of considering their testimony--we agree with the State that our review is *de novo*. See *Schmitz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 405 Ill. App. 3d 240, 244, 939 N.E.2d 40, 44 (2010) (the appellate court reviews *de novo* a trial court's determination that is based solely on documentary evidence).

B. Sexually Violent Person as Defined Under the Act

Section 5(f) of the Act provides as follows:

" 'Sexually violent person' means a person who has been convicted of a sexually violent offense *** and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual vio- lence."  725 ILCS 207/5(f) (West 2008).

- 9 -

C. Proceedings Under the Act

Section 70 of the Act, entitled "Additional discharge petitions," provides as follows:

"In addition to the procedures under Section 65 of this Act, a committed person may petition the committing court for discharge at any time, and the court must set the matter for a probable cause hearing ***.  ***  If the person has not previously filed a petition for discharge without the Secretary's approval, the court shall set a probable cause hearing and continue proceedings under paragraph (b)(2) of Section 65, if appropriate."  725 ILCS 207/70 (West 2008).

(Section 65(b)(2) of the Act mandates an evidentiary hearing when a trial court finds probable cause exists to believe a respondent is no longer a sexually violent person.)

D. Respondent's Claim That the Trial Court Abused Its Discretion by Denying His Amended Petition for Discharge

As previously stated, respondent contends that the trial court abused its discretion by weighing the conflicting testimony of the parties' respective experts instead of determining only whether the evidence presented established probable cause to warrant an evidentiary hearing.  In support of his contention, respondent relies, in part, on Justice Stewart's dissent in *In re Detention of Cain*, 402 Ill. App. 3d 390, 397-400, 931 N.E.2d 337, 342-44 (2010) (Stewart, J., dissenting),

- 10 -

which involved facts similar to this case.

In *Cain*, 402 Ill. App. 3d at 391, 931 N.E.2d at 337, the respondent was (1) adjudicated a sexually violent person under the Act and (2) committed to IDHS for care, custody, and treatment. Eight years later, after denial of numerous previous petitions, the respondent filed another petition for discharge or conditional release pursuant to the Act. *Cain*, 402 Ill. App. 3d at 391, 931 N.E.2d at 337-38. At a probable-cause hearing on the respondent's petition, the trial court considered (1) the State's reexamination evaluation prepared by Dr. Raymond Wood and (2) a psychological evaluation prepared by the respondent's court-appointed expert, Dr. Kirk Witherspoon, the same expert whose report is at issue in the present case. *Id.,* at 391-92, 931 N.E.2d at 338.

Wood employed two actuarial assessment instruments to designate the 71-year-old respondent as a moderate to high risk to sexually reoffend. *Cain*, 402 Ill. App. 3d at 393, 931 N.E.2d at 339. Wood's evaluation noted the respondent had additional risk factors, which included his (1) personality disorder, (2) low motivation for treatment, (3) lack of remorse, (4) victim-blaming stance, (5) tolerant sex-crimes attitude, and (6) sexual interest in children. Wood also noted that respondent did not warrant a reduction in his recidivism risk because of his medical condition, age, or progress in sex-offense-specific treatment. *Cain*, 402 Ill. App. 3d at 393-94, 931 N.E.2d at 339. Wood characterized the respondent as "dangerous" in that it was

- 11 -

substantially probable that he would engage in further acts of sexual violence if released. *Cain*, 402 Ill. App. 3d at 394, 931 N.E.2d at 339.

Witherspoon countered by administering two different actuarial assessment instruments, which showed that the respondent (1) was " 'not associated with marked antisocial tendencies' " and (2) had a profile that suggested a low recidivism risk. *Cain*, 402 Ill. App. 3d at 395, 931 N.E.2d at 340. Witherspoon recommended that the respondent be discharged from IDHS custody and control based on his (1) low recidivism risk due primarily to his age, (2) increasing infirmity, and (3) abated, if not absent, sexually deviant interests and propensities. *Id*.

In affirming the trial court's dismissal of the respondent's petition for discharge or conditional release, the appellate court noted that the trial court "obviously gave Wood's opinions regarding the respondent's dangerousness greater weight than Witherspoon's." *Cain*, 402 Ill. App. 3d at 397, 931 N.E.2d at 342.

Justice Stewart dissented, concluding that the conflicting opinions of the qualified experts as to the respondent's recidivism risk constituted sufficient probable cause to warrant an evidentiary hearing. *Cain*, 402 Ill. App. 3d at 397, 931 N.E.2d at 342 (Stewart, J., dissenting). In support of his position, Justice Stewart noted the following:

> "The procedure the majority affirms allows
> the trial court to choose between conflicting

expert reports as the primary basis of its decision that one who is imprisoned indefinitely, albeit for treatment, is not entitled to a trial to determine if he must remain imprisoned indefinitely.  Instead of allowing a trial at which disputed questions of fact can be resolved, this procedure allows the court to bypass all of the truth-seeking functions and protections of our rules of evidence.  The problem with the procedure the majority affirms is that it is devoid of any standard by which it can be determined what must be presented by a detainee to justify a finding of probable cause.  If the statutory procedures by which a detainee is allowed to raise the possibility of his discharge or conditional release are to have any meaning, then a detainee should be able to discern what is required in order to obtain a trial at which a trier of fact can consider and resolve disputed issues of fact.

* * *

The procedure affirmed by the majority is contrary to the rules of evidence and is not supported by the plain words of the Act. It is contrary to the rules of evidence be-

cause it requires a trial judge to do the impossible--make credibility and reliability determinations based upon the content of written reports of experts without any testimony from the authors. It is not supported by the plain words of the Act because the plain meaning of a probable cause hearing is to determine whether reasonable grounds exist to believe that a detainee should be discharged or conditionally released. If such grounds exist, the detainee is entitled to a trial where a trier of fact weighs the credibility of witnesses, not reports, and determines the ultimate issue. Surely, the written opinion of a qualified expert that a detainee should be discharged meets the probable cause standard." *Cain*, 402 Ill. App. 3d at 397-400, 931 N.E.2d at 342-44 (Stewart, J., dissenting).

We find Justice Stewart's rationale and reasoning persuasive and agree with his conclusion that the trial court's responsibility at a probable-cause hearing under the Act does not involve the weighing of conflicting expert opinions but, instead, determining whether reasonable grounds exist to believe that a detainee should be discharged or conditionally released.

We find support for that conclusion in *In re Detention*

*of Hardin*, 238 Ill. 2d 33, 932 N.E.2d 1016 (2010), a case decided the day before *Cain*. One of the issues decided in *Hardin* involved determining "the quantum of evidence necessary to establish the three elements required for a finding of probable cause in a [sexually violent person] proceeding" under section 30 of the Act (725 ILCS 207/30 (West 2008)). *Hardin*, 238 Ill. 2d at 44, 932 N.E.2d at 1022. In defining that evidentiary standard--an issue of first impression--the supreme court adopted the following rationale employed in *State v. Watson*, 227 Wis. 2d 167, 205, 595 N.W.2d 403, 420 (1999), a case involving a Wisconsin statute similar to the one at issue in this case:

> "In a [sexually violent person] probable cause hearing, the *Watson* court merely required the State to 'establish a *plausible account* on each of the required elements to assure the court that there is a substantial basis for the petition.' (Emphasis added.) [Citation.] In making that determination, the trial judge must consider 'all reasonable inferences that can be drawn from the facts in evidence.' [Citation.] The requirement that the evidence supporting each element be 'plausible' indicates that trial judges need not ignore blatant credibility problems, but the *Watson* court stressed that this type of hearing was 'not a proper forum to choose

between conflicting facts or inferences.'
[Citation.]  Consequently[,] if after hearing
the evidence, the trial judge decides the
probable cause determination is supported by
a reasonable inference, the cause should be
held over for a full trial.

Today we adopt the *Watson* evidentiary
standards to guide our own [sexually violent
person] probable cause proceedings.  They are
consistent with our traditional approach in
criminal cases and provide significant guid-
ance to our trial courts for probable cause
hearings in [sexually violent person] pro-
ceedings."  *Hardin*, 238 Ill. 2d at 48, 932
N.E.2d at 1024.

The supreme court clarified the probable-cause standard
further in *Hardin* by quoting the following:

"In *People v. Jackson*, we explained that
*'whether probable cause exists is
governed by commonsense consider-
ations, and the calculation con-
cerns the probability of criminal
activity, rather than proof beyond
a reasonable doubt*.  [Citation.]
"Indeed, probable cause does not
even demand a showing that the

belief that the suspect has committed a crime be more likely true than false." [Citation.]' (Emphasis added.) *People v. Jackson*, 232 Ill. 2d 246, 275[, 903 N.E.2d 388, 403] (2009).

Although *Jackson* addressed probable cause in the context of a motion to quash arrest and suppress evidence (*Jackson*, 232 Ill. 2d at 274[, 903 N.E.2d at 403]), the same concept is applicable in other criminal contexts, such as preliminary hearings (725 ILCS 5/111-2(a) (West 2006) ***)." *Hardin*, 238 Ill. 2d at 45, 932 N.E.2d at 1022-23.

In light of the aforementioned principles, we turn to the merits of respondent's contention that the trial court abused its discretion by weighing the conflicting testimony of the parties' respective experts instead of determining only whether the evidence presented established probable cause to warrant an evidentiary hearing.

In this case, the evidence respondent presented at the January 2010 probable-cause hearing (through the report of Witherspoon, whose expertise the State does not challenge) showed that (1) he did not exhibit (a) present or historic antisocial tendencies or (b) any form of deviant sexual psychopathology; (2) he was assessed as a "low to moderate" recidivism risk on one

actuarial assessment and a "low" recidivism risk on two other actuarial assessments; and (3) Witherspoon, a clinical and forensic psychologist, recommended respondent's discharge from IDHS care and control based on his expert opinion that respondent did not demonstrate significant emotional, interpersonal, behavioral, or cognitive problems.

Notwithstanding the aforementioned evidence, the trial court's comments immediately prior to denying respondent's amended petition at the January 2010 hearing showed that it (1) relied on the State's expert evaluation to find that nothing had changed since respondent's commitment in February 2008 and (2) discounted Witherspoon's evidence by referring only to the evidence Witherspoon presented at the October 2007 trial on the State's original petition to detain him. In addition, although the court stated in its February 2010 written order that it considered Witherspoon's amended psychological evaluation, the court's February 2010 order clearly shows that it placed greater emphasis on the State's expert evidence when it (1) denied respondent's amended petition for discharge from IDHS custody and control under section 70 of the Act (725 ILCS 207/70 (West 2008)) and (2) granted the State's motion for finding of no probable cause based upon review of reevaluation report under section 55 of the Act (725 ILCS 207/55 (West 2008)).

As the supreme court stated in *Hardin*, 238 Ill. 2d at 52, 932 N.E.2d at 1026, a probable-cause hearing under the Act is a preliminary proceeding that "determine[s] essential or basic

facts as to probabilities *** while remaining cognizant of the respondent's liberty rights."  (Internal quotation marks omitted.)  Here, the trial court improperly weighed the contradictory evidence presented by the parties' respective psychological experts instead of determining whether respondent's evidence that he was no longer a sexually violent person was plausible.  See *Hardin*, 238 Ill. 2d at 49, 932 N.E.2d at 1025 (as long as the evidence establishes a plausible account, probable cause is established).  Because we conclude that the evidence respondent presented was sufficient to establish probable cause that he was no longer a sexually violent person, we reverse the trial court's judgment and, consistent with the legislature's intent as expressed in section 65(b)(2) of the Act, remand with directions that the court conduct an evidentiary hearing on respondent's amended petition for discharge from IDHS custody and control.

### III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand with directions that it conduct an evidentiary hearing pursuant to section 65(b)(2) of the Act (725 ILCS 207/65(b)(2) (West 2008)).

Reversed; cause remanded with directions.