NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 21, 2012[*]
Decided March 21, 2012

*Before*

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 11-2830

| | |
|---|---|
| RICHARD M. SMEGO, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 09-3177 |
| ANITA PAYNE, et al., *Defendants-Appellees*. | Harold A. Baker, *Judge*. |

**O R D E R**

Richard Smego, a civilly committed sex offender, *see* 725 ILCS 207/1–99, appeals from the grant of summary judgment for the defendants in this action under 42 U.S.C. § 1983. Smego is confined at the treatment center in Rushville, Illinois, and claims that the facility director and four other current or former members of the staff deprived him of adequate medical care and retaliated when he complained. We conclude that a jury reasonably could decide that three of the defendants, all of them responsible for treating the mental disorder that prompted Smego's commitment to Rushville, violated his

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

constitutional rights by causing vital treatment to be discontinued. We thus vacate the judgment in favor of those defendants and remand for further proceedings.

We review the evidence in the light most favorable to Smego, *see Coleman v. Donahoe*, 667 F.3d 835, 842 (7th Cir. 2012), though we note that very few of the significant facts are in dispute. In late March 2009 Smego filed a grievance alleging that Amber Jelinek, at that time a predoctoral psychology intern who was recently hired and assigned as Smego's primary therapist, had inexplicably altered his established treatment plan and berated him about his presentation at a session of the weekly group therapy that she led. Residents are warned that successful completion of that therapy, called Core Group Treatment, is a precondition to release from Rushville, where Smego has been committed since 2006. In his grievance Smego explained that he also had shared a list of unresolved concerns about group therapy with Dr. Okey Nwachukwu-Udaku, a psychologist on his treatment team who regularly helped moderate the group sessions. One of Smego's worries, expressed in mid-February and again in early March, was that staff were tolerating increasingly aggressive and violent behavior from participants, including threats of physical harm directed at other group members. A grievance examiner interviewed Smego and reported to Anita Payne, a clinical social worker and the leader of his treatment team, that Smego had stopped attending group therapy because of his concerns and his suspicion that Jelinek was "out to get him." Before a decision was made on Smego's grievance, Payne asked him to withdraw the submission so that she and her treatment team could resolve the matter internally. Smego refused and asked to be reassigned to a different therapy group.

Smego was not reassigned. In April he resumed participating in Jelinek's group, though he continued to complain to her and to Dr. Nwachukwu-Udaku about hostility from other members. Late that month he notified Jelinek that, about a week after he had filed his grievance, another participant assaulted him during a break in one of her group sessions. Smego described how the man had confronted him in the break room, reached into a leg of his gym shorts and grabbed his genitals, and tried to penetrate him digitally. Smego has said under oath that he also told team leader Payne about the incident, and she has not denied knowledge. Jelinek confirmed in her progress notes that Smego had been "sexually assaulted by another resident." But she kept him in the same group, Jelinek now maintains, because Smego had not suggested that he feared another assault or was "afraid of any particular individual." Smego disputes this contention. Jelinek also explains that, in her opinion, "it was more appropriate at the time for Mr. Smego to try to work through his problems rather than avoid them." Jelinek concedes that a sexual assault at Rushville "becomes a security issue" and that the victim would "have the right to file criminal charges," but she does not assert that she handled the assault against Smego as a security matter or explain why she did not. Nor does she say that she filed an incident report, even though employees of the Illinois Department of Human Services, which operates Rushville,

are required to do so if they discover that a resident has violated facility rules. *See* ILL. ADMIN. CODE tit. 59, § 299.640.

In June the grievance examiner finally concluded her work on Smego's submission from March. In recommending that Smego's grievance be denied, the examiner noted that Payne had agreed to work with him on his treatment plan and that he had rejoined group therapy with Jelinek. The facility director accepted the examiner's recommendation. When Smego appealed that ruling, the examiner contacted him, he says, and threatened to do "everything she could" to convince him to withdraw the appeal.

Smego again stopped attending Core Group Treatment in late August. Although he had continued to alert Jelinek and Dr. Nwachukwu-Udaku about the open hostility displayed by some participants, no action was taken by staff. Jelinek responded by twice suspending Smego for a week, citing truancy as the reason, and then in early September she removed him from Core Group Treatment entirely. Dr. Nwachukwu-Udaku signed off on the suspensions and removal. Soon after that Jelinek was replaced as Smego's primary therapist. Yet in November she participated with Payne and Dr. Nwachukwu-Udaku in approving an updated treatment plan for Smego. That plan now relegates the critical Core Group Treatment as a "deferred" goal and says that Smego must complete "ancillary treatment groups as a prerequisite for returning" to Core Group Treatment. The plan calls for Smego to start with a group program called "Power to Change" and to meet with his primary therapist once per month to discuss the difficulties he experienced in Core Group Treatment.

Meanwhile, in July 2009, Smego had filed this § 1983 action against Jelinek, Payne, and Dr. Nwachukwu-Udaku. He also named as defendants the grievance examiner and the facility director, but neither was personally involved in the underlying events, and so we do not mention them further. Smego focused his civil complaint on his treatment team's alleged indifference, and punitive responses, to his expressions of concern about the hostility and threats of violence among participants in Core Group Treatment. The district court allowed Smego to proceed *in forma pauperis* on claims that those three defendants had denied him adequate medical care and engaged in retaliation.

In early 2010 Smego was moved to a new living unit at Rushville where he no longer had contact with Jelinek, Payne, or Dr. Nwachukwu-Udaku. (At some later time, Payne and Dr. Nwachukwu-Udaku ceased being employed at Rushville.) Before being moved, Smego says, those defendants told him that he would not be allowed to participate in Core Group Treatment unless he dropped this lawsuit or joined "Power to Change." At his deposition in March 2010, Smego said that he had agreed to join "Power to Change" and believed that his current primary therapist had put in a referral for him to join the program. But Smego was

never enrolled, and in response to his October 2010 inquiry under the Illinois Freedom of Information Act, 5 ILCS 140/3, the Department of Human Services acknowledged that "Power to Change" was "not currently being offered at the Rushville facility." Thus, by Smego's account, the defendants had, first, dismissed him from Core Group Treatment after he complained about the level of hostility and disclosed the sexual assault, and, second, told him that he could not return to this essential group therapy unless he dropped this lawsuit or completed a "prerequisite" that Rushville does not offer.

The defendants moved for summary judgment in early 2011. Jelinek did not suggest that the assault committed against Smego was too trivial to mandate action, nor did she deny that Smego had identified his assailant as one of the other participants in her group. Neither did she deny that Smego's absences had followed the assault. As noted, her only explanation for refusing to transfer Smego to a different therapy group after the assault was her personal view that he should be forced to "work through his problems." Payne did not deny that Smego had told her about the assault, and in fact she conceded that as team leader she has access to, and regularly audits, the treatment notes of her team members. Payne did not assert that she was unaware of the link between the assault against Smego and his absences afterward. Nor did Dr. Nwachukwu-Udaku, who signed off on Jelinek's proposal to terminate Smego's participation in group therapy. None of these defendants denied that they then approved a treatment plan which, effectively, penalizes Smego for seeking a transfer to a different group after the assault. And neither did any of the three contradict Smego's deposition testimony that they told him that the only way to get back into Core Group Treatment was to drop this lawsuit or sign up for a program that does not exist at Rushville.

Smego responded to the defendants' motion in the form required by C.D. Ill. R. 7.1(D)(2). As evidence of retaliation, he submitted affidavits from ten of his fellow detainees—including the one who committed the assault—saying that guards conducted a shakedown of his cell in July 2009 shortly after he filed this lawsuit and warned that they would conduct another if he filed any more grievances. Three detainees also said that they witnessed Jelinek tell Smego that, because he filed this lawsuit, he would be kicked out of Core Group Treatment unless he quit. Some of these Rushville residents confirm that Smego was badgered and threatened with physical violence by other participants in group therapy, that Jelinek and Dr. Nwachukwu-Udaku were present on many occasions, and that neither therapist was willing to address the issue. As evidence of inadequate treatment, Smego produced a letter from Dr. Kirk Witherspoon, an outside clinical psychologist who on a number of occasions has completed psychological evaluations of sex offenders for Illinois state courts. *See In re Detention of Stanbridge*, 948 N.E.2d 1063, 1065 (Ill. App. Ct. 2011); *In re Commitment of Sandry*, 857 N.E.2d 295, 301 (Ill. App. Ct. 2006). Dr. Witherspoon opined that the refusal to transfer Smego to a different therapy group after a participant had assaulted

him was "quite inappropriate." Dr. Witherspoon explained that licensed psychologists must comply with ethical guidelines requiring that patients "be treated in a respectful manner" and advised that Smego could inform licensing authorities if he cannot otherwise resolve the matter.

In granting summary judgment for the defendants, the district court reasoned that there was "no evidence" that the defendants' medical decisions had departed substantially from accepted professional standards, and no evidence to support Smego's claim of retaliation. Rather, the court asserted, the evidence at summary judgment established that Smego had been booted from group therapy because he refused to attend, not because he complained about his safety, and that Jelinek had acted within her professional discretion by deciding that Smego needed to "work out his problems with the group members." The court did not mention Dr. Witherspoon's opinion.

On appeal Smego argues that the three members of his treatment team deprived him of essential medical care by ignoring a "powder keg" of violent threats among participants in Jelinek's therapy group and then refusing to transfer him to different group after the assault by one of those participants. Civilly committed sex offenders have a Fourteenth Amendment right to adequate medical care. *See Battista v. Clarke*, 645 F.3d 449, 452–53 (1st Cir. 2011); *Sain v. Wood*, 512 F.3d 886, 893 (7th Cir. 2008); *Senty-Haugen v. Goodno*, 462 F.3d 876, 889 (8th Cir. 2006). The defendants do not dispute that Smego's mental disorder—the reason that he must complete Core Group Treatment if he hopes to be released from Rushville—constitutes a serious medical need. But they argue that we must defer to decisions of medical professionals unless a jury reasonably could find a particular decision "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see Youngberg v. Romeo*, 457 U.S. 307, 322–23 (1982); *Sain*, 512 F.3d at 894–95.

We conclude that there is enough evidence in this record for a jury to find in Smego's favor. When he avoided Core Group Treatment out of fear for his safety, the defendants opted to terminate his treatment altogether rather than move him to a different group, even though Jelinek herself has acknowledged that the sexual assault raised a serious security concern and that Core Group Treatment is essential for Smego to progress toward release. Jelinek's only explanation for refusing a transfer to a different group is that Smego should be forced to "work through his problems." Not one medical professional has defended that view as consistent with professional standards. In fact, the only professional to comment on Jelinek's approach describes it as "quite inappropriate" under the ethical standards for clinical psychologists. In this court the defendants do not so much as acknowledge Dr. Witherspoon's opinion, and yet they make the frivolous assertion that "no evidence" shows that they acted in a manner inconsistent with accepted medical practice. Construed

in Smego's favor, Dr. Witherspoon's assessment reveals more than a difference of opinion about the best course of treatment. *See Norfleet*, 439 F.3d at 396; *Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996). Rather, putting aside the issue of retaliation, Dr. Witherspoon's opinion evidences a material dispute of fact concerning whether Jelinek substantially departed from professional standards by not moving Smego to a different therapy group. *See Ortiz v. Webster*, 655 F.3d 731, 735 (7th Cir. 2011); *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *Gayton v. McCoy*, 593 F.3d 610, 623–24 (7th Cir. 2010); *Chavez v. Cady*, 207 F.3d 901, 905–06 (7th Cir. 2000).

What we have said about Jelinek applies equally to Payne and Dr. Nwachukwu-Udaku. To be liable under § 1983, they needed to have known of the deficient medical treatment and either facilitated, approved, condoned, or blinded themselves to it. *See Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006). As for Payne, she was in charge of Smego's treatment team and does not deny knowledge of the assault or Smego's other safety concerns. She concedes that it was her responsibility to oversee the team's conduct and review progress notes, and a jury may infer that she closely monitored Jelinek, who was, at the time, a fresh-out-of-school intern. Payne nonetheless agreed to "defer" Core Group Treatment and require Smego to complete the illusory "Power to Change" program as a prerequisite to him rejoining group therapy. As for Dr. Nwachukwu-Udaku, even though Smego had repeatedly told him about troubling threats from participants in group therapy, he approved Jelinek's plan to boot Smego from Core Group Treatment entirely rather than transfer him to a different group. And, like Payne, Dr. Nwachukwu-Udaku ratified a treatment plan that requires Smego to complete the nonexistent "Power to Change" as a prerequisite to obtaining the treatment he actually needs. A jury reasonably could conclude that both Payne and Dr. Nwachukwu-Udaku actively participated in depriving Smego of essential medical care. *See Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

If there was doubt about that conclusion, Smego's evidence of retaliation eliminates it. To succeed on his retaliation claim, Smego must show that (1) he engaged in activity protected under the First Amendment, (2) the defendants' actions would deter protected activity in the future, and (3) his complaints motivated their actions. *See Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert,* 557 F.3d 541, 546 (7th Cir. 2009). As to the first element, the defendants argue that Smego's expressions of concern were not protected activity because some of them were raised during group therapy. *See Watkins*, 599 F.3d at 797. But Smego also raised his concerns through the formal grievance system and this lawsuit, and those acts were protected by the First Amendment. *See Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005); *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Second, the defendants argue that their actions would not deter future protected activity. But even

when it does not constitute deliberate indifference, deprivation of medical care is enough to deter protected activity when combined with retaliatory animus. *See DeWalt*, 224 F.3d at 618; *Murphy v. Lane*, 833 F.2d 106, 108–09 (7th Cir. 1987). The defendants last contend that Smego has no evidence of retaliatory motive. But the chronology of events is enough to raise an inference of retaliation. *See Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009); *Murphy*, 833 F.2d at 109. After Smego first complained about violent threats from participants of his therapy group, Jelinek and Payne learned that he had been assaulted by one of those participants and yet refused to seek alternative arrangements. Then, after Smego had filed this lawsuit, Jelinek told him he would be removed from Core Group Treatment unless he quit voluntarily. He did not quit, and after the district court allowed his claims to proceed, Jelinek and Dr. Nwachukwu-Udaku terminated him from his therapy group within a month and, along with Payne, later updated his treatment plan to include an impossible-to-complete prerequisite. Moreover, all three defendants told him that he would remain barred from Core Group Treatment unless he dropped this lawsuit (or performed the impossible task of completing "Power to Change"), and that evidence is enough to raise a reasonable inference that they deprived him of treatment because of hostility toward his exercise of protected rights. *See Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011); *Spiegla v. Hull*, 371 F.3d 928, 943 (7th Cir. 2004).

There is sufficient evidence in this record for a jury to find that, since mid-2009, the treatment that is essential to Smego's hopes of eventual release from Rushville has been at a standstill because of the actions of Jelinek, Payne, and Dr. Nwachukwu-Udaku. The district court's grant of summary judgment in favor of these defendants is VACATED, and as to those defendants the case is REMANDED for further proceedings consistent with this order. In all other respects the judgment is AFFIRMED.